JOHN HENDRICKSON, Jr. plaintiff in error *vs.* THE PEOPLE defendants in error.

On a criminal trial, it is no objection to proving a confession of the defendant, that it was made when he was under oath, if it appear that it was free and voluntary and not made under the influence of fear or hope.

What a person says, when examined as a witness in a legal proceeding, may be used in evidence against him; but the statements or oath of a party accused can not be given in evidence. *Lewis' Case,* 6 *Carr. & P.* 161; *David's Case, id.* 177; *and Owen's case* 9 *Carr. & P.* 238; reviewed and overruled.

Where on the trial of a party for the murder of his wife, it appeared that the prisoner had been examined as a witness before the coroner's inquest, on the evening subsequent to the death, and that he had not then been charged or accused of the crime, and that his statements, then made under oath, were free and voluntary, such statements were held to be properly receivable in evidence against him.

*Held* also, that evidence of conversations between the prisoner and his wife, and between the prisoner and his brother in-law, tending to show an alienation of affection on his part in regard to his wife, was admissible on the question of motive.

*Held* also, that the will of the prisoner's father-in-law was properly received in evidence, for the purpose of showing that the pecuniary expectations, which the prisoner might have entertained by reason of his alliance with the family, had been disappointed.

The People *v.* Hendrickson.

The prisoner had been convicted at the Oyer and Terminer in Albany county of the murder of his wife, and brought a writ of error to this court. The questions decided are fully stated in the opinion of the court.

*A. J. Colvin* (Dist. Att'y) for the people.

*N. Hill, Jr.,* for the prisoner.

*By the Court,* HARRIS, J. — On the evening subsequent to the death of his wife, the defendant was sworn and examined as a witness before the Coroner's inquest. Upon such examination he gave an account of the circumstances attending the death, after which, upon being asked when he had been in Albany, he answered that it was *two weeks* ago the last Saturday. Upon being asked whether he had not been there since, he, answering, as if correcting himself, said he had been in Albany *a week* ago the last Saturday. He was again asked whether · he had not been in Albany still later than that, and he replied that he had been there on the last Saturday. Upon being inquired of, he stated the object for which he went to Albany and mentioned several places where he had been while there. He said he did not remember having been in Springsteed's drug store, or in any other drug store. Upon the trial, the counsel for the prosecution offered to prove what the defendant had thus stated before the Coroner's inquest. It was objected to, on the ground that such statements were not voluntary. The objection was overruled, and the testimony was received. No charge had been made against the defendant at the time he was examined, nor is there any evidence that he was suspected of the crime, unless the fact is to be inferred from the tenor of his examination. The question is thus presented whether, upon a trial for murder, statements made by the defendant, upon oath, before the jury summoned to make inquisition concerning the death, and before he had been accused of the murder, are admissible as evidence for the prosecution.

Confessions have been appropriately divided into two classes,

*judicial* and *extra-judicial*. (1 *Greenleaf's Ev.* § 216.) The *former* embraces the preliminary examination authorized by statute, when a party accused of crime is brought before a magistrate. Such confessions, attended, as they are, with peculiar solemnities, take higher rank as evidence than other mere admissions or declarations. Such other admissions and declarations constitute the class of *extra-judicial* confessions. They are to be proved, as other facts are proved, and, being proved, are to be submitted to the consideration of the jury.

The preliminary examination, which the magistrate, before whom a person accused of crime is brought, is authorized to take, must be conducted in the manner prescribed by law, or it will be deemed irregular and rejected. Thus it is required that the examination should not be taken upon oath. Whenever, therefore, it has appeared that the party accused has been sworn, the examination has been excluded. (*Smith's case*, 1 *Stark. R.* 242; *River's case*, 7 *Carr. and P.* 177; *Pikesly's case*, 9 *Carr. and P.* 124.) This rule is confined to the official examination of the *party accused*. It is no objection to a confession, as such, that it has been made when the party was under oath.

Accordingly, where a prisoner has been examined as a witness upon a charge against another for the same offence, his deposition was received in evidence upon his own trial as a confession. Parke, J. said, " He might, on that, as well as on any other occasion, when called *as a witnsss*, have objected to answer any questions which might have a tendency to expose him to a criminal charge, and not having done so, his deposition is evidence against him." (*Haworth's case*, 4 *Carr. and P.* 254.) In *Tubby's case* , (5 *Carr. and P.* 530) it was proposed to read in evidence a statement made upon oath by the prisoner. Vaughn, B. said, " The question is, is it the statement of the prisoner upon oath? Clearly it is not, for he was not *a prisoner* at the time he made it." In the case of *Merceron*, (2 *Starkie*, 366,) a magistrate was tried upon an indictment for misconduct in office. He had previously been examined before a committee of the House of Commons, and it was pro-

The People *v.* Hendrickson.

posed to prove what he had said upon that examination. The evidence was objected to, not because the statements were made upon oath, but because, having been compelled to attend before the committee, the declarations were not voluntary, but it was held to be admissible.

It is true that the same judge before whom the case was tried subsequently questioned the correctness of the report: (*Rex* v. *Gilham*, 1 *Moody's C. C.* 203) but so far as it is entitled to any weight as an authority, it is against the doctrine that a confession is to be excluded as evidence merely because it has been under oath. In *Wheater's case*, (2 *Moody's C. C* 45) a charge had been made against the prisoner before the Lord Mayor of London for forgery, but the complainant failed to make such a case as would warrant a commitment. After this, the prisoner was examined before commissioners in bankruptcy, in relation to the same transactions. Upon his trial, upon an indictment for forgery, his statements, when examined before the commissioners, were offered in evidence and were received. The question was subsequently presented to the fifteen judges. It was insisted that, the prisoner having been compelled to testify, his answers were not admissible as evidence against him. But the judges were of opinion that the evidence was properly received.

In the case of *Broughton,* tried in North Carolina, (7 *Iredell,* 96) the defendant had been examined on oath before the grand jury touching the murder for which he was subsequently indicted. On the trial, his statements before the grand jury were offered in evidence and received. Upon an application for a new trial it was insisted that the testimony before the grand jury ought not to have been received, because, having been given under oath, it was not voluntary. The motion for a new trial was denied. Ruffin, Ch. J., said, " It is certainly no objection to the evidence, merely that the statement of the prisoner was given by him *as a witness* under oath. He might have refused to answer questions when he could not do so without criminating himself, and the very ground of that rule of law is, that his answers are deemed voluntary and may be

used afterwards to criminate or charge him in another proceeding. Such is clearly the law."

The only valid objection that can be taken to any *extra-judicial* confession is, that it was not voluntary. No witness is bound to answer any question, when the answer will tend, in the least degree, to criminate him. Of this he is made the judge. If, waiving the right to object on this ground, he proceeds to answer, his statements are to be regarded as voluntary and may be used against him for all purposes. (2 *Stark. Ev.* 50; 1 *Phil. Ev., Cowen & H. ed.* 110; *Roscoe's Cr. Ev., ed.* 1852, 38; 1 *Greenleaf's Ev.*, § 219.) In every such case, therefore, the proper inquiry is, not whether the statement was made under oath, but whether it was free and voluntary, or was made under the influence of fear or hope. In the one case, the confession may always be proved — in the other, never. There may be difficulty in determining whether a confession has been made under the influence of hope or fear, but, that question being determined, the question of admissibility is also determined.

I am aware that there are three or four reported cases which have been regarded as sustaining a different doctrine. The principal of these are *Lewis's case*, (6 *Carr. and P.* 161) *Davis's case*, (6 *Carr. and P.* 177) *and Owen's case.* (9 *Carr. and P.* 238.) These are the cases principally relied upon as sustaining the doctrine that a statement made upon oath is not to be regarded as voluntary, and therefore not receivable as evidence. A brief examination of these cases will show, I think, that, instead of sustaining the position in support of which they are cited, they may all be referred to the general criterion in respect to the admissibility of extra-judicial confessions already stated.

In *Lewis's case* the charge was poisoning. The magistrate, on the day he committed the defendant, had summoned her with several other persons before him and examined them all on oath touching the poisoning. When he had concluded the examination he committed Lewis for trial. Baron Gurney, upon the trial, refused to receive the examination, thus taken, as evidence. He said that as the deposition had been taken at

the same time as all the other depositions on which she was committed, and on the very same day on which she was committed, he did not think it was receivable. He added, also, that he did not think the examination was perfectly voluntary. In *Davis's case*, a father and daughter had together been indicted for receiving stolen goods. Upon the trial, it appeared that the daughter had been examined as a witness against her father before the committing magistrate. It was proposed to prove what she then said, but *Baron Gurney* refused to hear it. He said, " if, after having been a witness, you make her a prisoner, nothing of what was said then, can be admitted as evidence."

In *Owen's case*, (9 *Carr. and P.* 83 *and* 238) there were three defendants. They were twice tried — once for rape and then for murder. Before the Coroner's inquest was held, they had all been arrested, and they were brought before the coroner in custody. They were each asked whether they wished to give evidence, and each said he did. They were then severally sworn and each made his statement upon oath. These statements were offered in evidence. It was conceded by the counsel for the defendants that, if they had come voluntarily before the coroner *as witnesses*, their statements would have been evidence against them. He placed his objection upon the ground that they had been brought before the coroner *as prisoners*, and not as witnesses. They had been treated by the coroner as persons charged with crime, and not as witnesses, for before they were examined, he inquired whether they were desirous of giving evidence. Under such circumstances, the examination might well be regarded as *judicial* in its character, and not as a mere examination of witnesses; and yet, upon the first trial, the prosecution was allowed to prove their statements. Upon the trial for murder, the evidence was excluded by Baron Gurney — and, I think, properly. The examination itself was illegal, and the statements could not be regarded as voluntary. The examination of a party *in custody* upon a charge of crime has never been allowed to be taken upon oath, and it is well settled that where a judicial examina-

tion is rejected for irregularity, proof of the statements made upon such examination will not be received.

Besides these three cases, which, it should be observed, are all *nisi prius* decisions, and made, too, by *the same judge*, *Wheeley's case* (8 *Carr. and P.* 250) has been referred to for the same purpose. In that case, the defendant had been accused of poisoning his wife. He had been brought before the coroner, upon the inquest, in custody. He there made a statement which, when offered in evidence against him upon his trial, purported to have been made upon oath. Baron Alderson held that, being made upon oath, it could not be received. The report of the case is very meagre, but enough appears to show that the defendant was brought before the coroner as a *party accused*, and not as a witness. This case was referred to upon Owen's first trial, which took place the next year. (9 *Carr. and P.* 83.) It is there stated that Baron Alderson had rejected the statement of the defendant, because it was on oath, and taken while the defendant was in custody. Williams, J., said he knew that his brother Alderson had rejected the evidence, but that he also knew that there had been a reaction in opinion, and he would therefore receive the evidence. It is stated elsewhere that Baron Alderson was in the next court at the time, and that Justice Williams had consulted with him. See *Joy on the Admissibility of Confessions*, 63.

Mr. Greaves, the learned editor of Russell's Treatise on Crimes, in a note referring to the cases of Lewis and Davis, above cited, says that, after the decision in Wheater's case, it may perhaps be doubted whether the fact that the prisoners had been examined on oath *as witnesses* was a sufficient reason for rejecting their depositions. (2 *Russ. on Crimes, Phil. ed. of* 1852 856, *note*.) If the depositions offered in evidence were to be regarded as having been made by *witnesses*, then, obviously, they are within the principle of Wheater's case, and ought not to have been rejected. If, on the other hand, they are to be considered as the *judicial* examination of a party accused or suspected of crime, as I think they may be, although such

examination may have been irregularly conducted, then they were properly excluded.

The rule applicable to such cases is, I think, accurately stated by Joy, in the treatise above cited. " A statement," he says, " not compulsory, made by a party, *not at the time a prisoner under a criminal* charge, is admissible in evidence against him, although it is made upon oath." The same writer adds, that " there are conflicting opinions of judges at *nisi prius* on this point, but the proposition appears to be established by high authority." Mr. Phillips, too, in his last edition, after noticing the decisions on the subject, says, " it may be laid down generally, (citing Wheater's case, among others, for the position,) that a statement upon oath by a person, not being a prisoner, and when no suspicion is attached to him, the statement not being compulsory, nor made in pursuance of any promise of favor, is admissible in evidence against him." See *Roscoe's Crim. Ev.*, (*Phil. ed. of* 1852,) 50. The author can not be understood as using the term " suspicion " in its proper sense.

It can not be that the fact whether or not some person may have entertained an undisclosed opinion or conjecture, in respect to the guilt of .the party, can be made a criterion for determining whether a confession is admissible in evidence or not. The *suspicion* must have so far become tangible as to make it the subject of proof. The party must, at least, have been *accused* though he may not have been arrested. That this is so, is evident from the facts in Wheater's case, upon which, chiefly, Mr. Phillips relies in support of his proposition. Wheater had been accused of forgery. He had been arrested upon the charge and brought before the Lord Mayor for examination. The proof against him not being sufficient to warrant a commitment, he was discharged. After this, he was examined as a witness in some bankrupt proceeding. Having been indicted for the forgery, his statements *as a witness* were received in evidence against him.

Of all the English cases that have been cited, this alone was brought before the *fifteen judges*. The decision was sustained.

It was held that, inasmuch as the defendant, when he testified, was not charged with the crime, and had not objected to answer, as he might, on the ground that his statements might have a tendency to criminate him, such statements might be proved as his voluntary confessions. If the mere fact that somebody had thought the defendant guilty of the crime, at the time he testified, would have been sufficient to exclude the evidence, the proof of this fact was at hand. But he was examined as a witness in a legal proceeding. He was not then under accusation for the crime, and, under these circumstances, it was deliberately adjudged that what he said was to be regarded as his voluntary confession. Broughton's case, already noticed, is to be regarded as sustaining the same doctrine.

From this review, I think it must be apparent that it is only when *a party accused* has been examined on oath that his statements are to be rejected when offered in evidence against him. The general rule, that what a person says, when examined as *a witness* in a legal proceeding may be used in evidence against him, has not been restricted or qualified. The witness speaks at the peril of having his statements turned against himself. He may refuse to answer any question, the answer to which may tend, in any degree, to involve him in a criminal charge. If, waiving this privilege, he proceeds to testify, his statements, though upon oath, are to be regarded as free and voluntary, and are received as evidence against him.

It has been said that the very fact that a witness objects to answer will excite suspicion, and may thus tend to involve him in an accusation. This may be so. A refusal to answer a pertinent question may be supposed to betray conscious guilt; but against this the law has furnished no protection. It guards the witness against *involuntary self-crimination* but not against the unfavorable surmises which his refusal to answer may suggest. It is only because his answer, if given, will be deemed to be voluntary, that a witness is excused from answering in any case.

In the case before us, the defendant was examined before the coroner's inquest, in the capacity of a witness. He had not

The People *v.* Hendrickson.

then been accused; nor was he, in any legal sense of the term, suspected of the crime for which he was subsequently indicted and tried. He had the same right as any other witness to decline answering any question, if, in his own opinion, the answer would tend to involve him in a criminal charge. If, after having so declined, he had still been required to answer, what he said could not have been used against him. Having testified, and having omitted to avail himself of his privilege to decline answering, his statements must be deemed free and voluntary, and were properly received in evidence against him upon the trial.

I think, too, that evidence of the conversations between the defendant and his wife, and also the conversation between the defendant and his brother-in-law, Hungerford, was properly received. The defendant was charged with the murder of his wife. The marital relation existing between them furnished a strong presumption in favor of his innocence. In the absence of proof to the contrary it was to be presumed that he loved her and would protect her.

It was important, therefore, for the prosecution, if it could, to repel this presumption by proof that the defendant had disregarded the claims of connubial duty. For this purpose, evidence tending, however slightly, to show an alienation of affection — any thing from which a jury might infer a desire to be free from the burden of one who was no longer the object of regard, was competent. Suppose it could have been proved that the defendant had said that he *hated* his wife, and wished to be rid of her, would any one doubt that this might be proved to rebut the presumption that he loved her? So any conduct or declarations evincing unkindness or disrespect, though less decisive in their character as evidence, were admissible as tending to show the state of the defendant's feelings towards his wife.

Nor do I think it was error to allow the will of Van Deusen, the defendant's father-in-law, to be given in evidence. By that will, the wife of the testator had become entitled to the whole estate for life. It was only upon the death of her

mother, that the defendant's wife would receive any part of her father's property.  Though the evidence may not have been very important, it was not irrelevant to show that any pecuniary expectations which the defendant might have entertained, by reason of his alliance with the family, had been disappointed

As this is a case involving the life of the defendant, I have examined it with a disposition to give him a new trial, if any, even the slightest error should be found to have been committed.  But, upon the most deliberate and anxious consideration of all the questions presented, I am constrained to say that I find no error in the proceedings.  The judgment of the court of Oyer and Terminer should, therefore, be affirmed.

Judgment affirmed.(*a*)

(*a*) The judgment in this case was affirmed by the court of appeals at the March term, 1854.  The cause had been argued in that court at the previous January term by

*John K. Porter*, for prisoner.

*Hamilton Harris*, (Dist. Att'y), for the people.

The following opinion was delivered by PARKER, J.  The wife of Hendrickson died on Sunday, the 6th of March.  On the evening of the next day a coroner's inquest was held, before which Hendrickson was sworn and examined as a witness.  He stated the circumstances attending the death of his wife  When interrogated as to his having been in Albany, he said he had been there "two weeks ago last Saturday;" and when asked if he had not been there since, he said, "O, yes, I believe I was there a week ago last Saturday," as if correcting himself; and on being further interrogated, said, "I was there last Saturday."  He further stated the object of his going to Albany, and mentioned several places in the city where he had been, but said he did not remember having been into Springsteed's drug store or any other drug store.

Upon the trial at the Oyer and Terminer, the counsel for the prosecution offered to prove the statement so made at the coroner's inquest.  The counsel for the prisoner objected to the evidence, on the ground that what the prisoner swore to on that occasion was not a voluntary statement.  The objection was overruled and the evidence received, to which the counsel for the prisoner excepted; and the alleged erroneousness of that decision constitutes the first ground on which the prisoner relies for a reversal of the judgment.

I. The general rule is, that all a party has said which is relevant to the questions involved in the trial, is admissible in evidence against him.  The exceptions to this rule are where the confession has been drawn from the prisoner by means of a threat or a promise, or where it is not voluntary, be-

The People *v.* Hendrickson.

cause obtained compulsorily or by improper influence. It is not claimed in this case, that the statement in question was obtained by means of any promise or threat, or by any inducement whatever; nor is it supposed that there was any compulsion or any influence affirmatively exercised upon the mind of the prisoner, beyond what is sought to be inferred from the fact, that he was required to testify as a witness. But it is contended that because he was so required to testify, upon a general inquiry into the cause of the death of his wife, his statement was not voluntary, and should have been excluded. The record shows that the objection at the trial was placed only on the ground that the statement was not voluntary.

Hendrickson was not in custody. He made no objection to being sworn as a witness, or to answering any question that was put to him. He was treated in every respect, like the other witnesses. At the time of his examination, no circumstances had been developed warranting a suspicion against him. The *post mortem* examination did not take place till the next day, and it was not until the second day after his testimony before the coroner's inquest that he was arrested under a warrant issued, not by the coroner, but by a police justice of the city of Albany. His statement as a witness was in no respect an admission of guilt. On the contrary, it was a denial of material facts attempted, on his trial, to be established by other witnesses. His testimony was calculated to ward off suspicion from himself, not to attract it towards him.

The question presented, therefore, is, whether, under the circumstances, the statement of a witness is to be excluded on the ground that it was not voluntarily made.

Several English *nisi prius* decisions were cited on the argument, which it is necessary to examine.

Merceron's case, ( 2 *Starkie, R.* 366,) decided in 1818, was an indictment against a magistrate for having corruptly and improperly granted licences to public houses which were his own property. ABBOT, J., permitted the prosecution to prove what the defendant had said in the course of his examination before a committee of the House of Commons, appointed for the purpose of inquiring into the police of the metropolis, though it was objected that the statement had been made under a compulsory process from the House of Commons, and that the declarations were not voluntary.

In the case of Haworth, (4 *Carr. and Payne,* 254.) decided in 1830, it appeared that before the prisoner was charged or suspected, a person named Shearer had been examined on the charge of forgery, and that the prisoner was called as a witness against Shearer, and his deposition taken. The counsel for the prosecution proposed to read this deposition as evidence against Haworth, which was objected to. Justice J. PARKE said, " I think that I ought to receive this evidence. The prisoner was not, when he made this deposition, charged with any offence, and he might, on that as well as on any other occasion when called as a witness, have objected to answer any question which might have a tendency to expose him to a criminal charge; and not having done so, his deposition is evidence against him.

The People *v.* Hendrickson.

In a note, by the reporter, to this case, it is said, that in a case tried at Worcester, where it appeared that a coroner's inquest had been held on the body of A, and it not being suspected that B was at all concerned in the murder of A, the coroner had examined B upon oath as a witness. PARKE, J., would not allow the deposition of B so taken on oath on the coroner's inquest to be read in evidence, on the trial of an indictment afterward found against B for the same murder.

I can not find that this anonymous case is anywhere reported more fully. It would be much more satisfactory, to know the particular circumstances of the case and the grounds for the decision. Without them, it is entitled to but little weight as authority. And so it seems to have been viewed by LITTLE-DALE, Justice, in the case of Rex agt. Clewes, tried before him during the same year, and reported as to other points in 4 *Carr. and P.*, 221. In Mr. Greaves' note *w*, 2 *Russ. on Crimes*, 860, 7 *Am ed.*, on the authority of his manuscript notes, he says, the grand jury asked LITTLEDALE, J., " Can evidence of a prisoner who was examined on oath before the coroner as a witness be admitted as evidence against the same person, when subsequently indicted for the murder of the person on whose body the inquest was held?" LITTLEDALE, J., answered in the affirmative; when, the case referred to in the anonymous note being mentioned, the judge (Littledale) directed the grand jury to receive the evidence and leave the point for discussion on the trial.

Tubby's case, (5 *Carr. and P.*, 530,) tried in 1833, was an indictment for burglary. Andrews, for the prosecution, proposed to read a statement made upon oath by the prisoner, at a time when he was not under any suspicion. Pendergast objected that it was a violation of the rule of law, which held that a prisoner should not be sworn. VAUGHAN, B., said, " I do not see any objection to its being read, as no suspicion attached to the party at the time. The question is, is it the statement of the prisoner under oath? Clearly it is not, for he was not a prisoner at the time he made it."

In Rex agt. Lewis, (6 *Carr. and P.* 161,) decided also in 1833, several persons, one of whom was the prisoner, were summoned before the committing magistrate touching the poisoning of C. No person was then specifically charged with the offence. The prisoner was sworn, and made a statement, and at the conclusion of the examination she was committed for trial. It was held that this statement was not receivable in evidence against the prisoner. GURNEY, B., said this case was quite distinguishable from that of Rex agt. Tubby, and that under the circumstances he should have agreed with his brother Vaughan. '' But (he said) this being a deposition made by the prisoner at the same time as all the other depositions on which she was committed, and on the very same day on which she was committed, I think it is not receivable. I do not think this examination perfectly voluntary." It has been supposed the prisoner was brought before the magistrate on a charge or suspicion of guilt, but Greaves says, in his notes, (2 *Russ. on Cr.* 857, 7 *Am. ed. note n.*) that he was counsel in this case, and that the prisoner was summoned in the ordinary way, as a person who could give some evidence touching the matter, and not because any suspicion attached to her.

The People *v.* Hendrickson.

In Rex agt. Davis, (6 *Carr. and P.* 177,) also decided in 1833, the daughter had been examined as a witness before the committing magistrate against her father, and was then committed as a joint receiver of stolen goods with him. Her statement was excluded as evidence against her on the trial by GURNEY B., on the same ground, as in Rex agt. Lewis. In regard to this case, Mr. Greaves says, (2 *Russ. on Cr.* 857, *note n*, 7 *Am. ed* ,) that the ground of the decision was, not that there was a suspicion in the mind of the magistrate, or even that the prisoner might be aware that there was such a suspicion, but that the prisoner had been examined *on oath as a witness*, and says, that after the decision in the late case of Rex agt. Wheater, (to which I shall refer hereafter,) it may be doubted whether that was a sufficient reason for rejecting the deposition.

In Regina agt. Wheeley, decided in 1838, (8 *Carr. and P.* 250,) a party who was charged with murder made a statement before the coroner at the inquest, which was taken down. The paper purported that the statement was made on oath. Alderson, B., held on the trial of the party for murder, that the statement was not receivable, and that parol evidence was not admissible to show that no oath had in fact been administered to the prisoner. If this was a case of the examination of a prisoner, and not of a witness, as it has been understood to be by commentators, (*Russ. on Cr.* 855 *and* 860, *and notes*,) its correctness will not be questioned, and it can have no bearing upon the question now before us.

The next case, in order of time, was Regina agt. Wheater, (2 *Moody's Crown Cases*, 45,) decided in 1838, which was an indictment for forgery. On the trial, before COLRIDGE J., 'the examination of the prisoner previously taken on oath, as a witness, before the commissioners of bankruptcy, concerning the bills alleged to be forged, was held admissible as evidence against him. The opinion of all the judges, was desired on this point, and the case was argued before all the judges, except Park, J., and Gurney, B., who held that the evidence had been properly received.

In *Regina* agt. Owen and al, (9 *Carr. & P.* 83,) tried in 1839, the defendants were indicted for rape. The prosecution offered to prove the statements made by Owen on oath at the inquest held on the body of the person ravished, while the defendants were in custody. The counsel for the prisoners admitted that where witnesses had been examined voluntarily, their deposition might afterward be read against them; but objected that these defendants were in custody, and cited the case of Wheeley, where Baron Alderson rejected the deposition because it was on oath and taken while in custody. But WILLIAMS, J., said, " I know that my brother Alderson did so; but I also know that there has been a reaction in opinion, (if I may be allowed the expression.) I shall therefore receive the evidence and reserve the point, if it shall become necessary." It is said that Baron Alderson, who had tried Wheeley's case, was in the next court, at this time, and that Williams, J., had consulted with him in an earlier part of the case. (*Joy on Confessions.* 62.)

In Regina agt. Owen and others, (9 *Carr. & P.* 248,) the same defendant were tried in 1840 for the murder of the person ravished; and Gurney, B. re

fused to receive in evidence the deposition on oath of the prisoners taken before the coroner's inquest, though it must have been known they had been received on the previous trial of the same prisoners for rape. Baron GURNEY, however, cited Wheater's case, then recently tried before Colriedge, and admitted he could not, on principle, see the distinction between that and some of the other cases.

In the later case of Regina agt. Sandy's (1 *Carr. & Marsh.* 345,) decided in 1841, the prisoner was tried for murder, and ERSKINE, J. admitted in evidence her deposition taken at the coroner's inquest, and reserved the point for the consideration of the fifteen judges.

All the decisions to which I have referred, except that in the case of Wheater, were made at *nisi prius*, and their general current is certainly in favor of the admissibility of the evidence in question; but to give them, or any of them, much weight as authority, it is necessary to understand the reasons that governed, and to see on what principles they are based. Without that, decisions made at the assizes, necessarily without time for consultation and examination, can avail but little in deciding a controverted question of law.

So far as the evidence was rejected on the ground that the statement was on oath, as in the case of Davis and others, it must now be regarded as settled by the decision of all the judges in Wheater's case above cited, that that, of itself, constitutes no objection. Mr. Joy, in his treatise on the admissibility of confessions, reviews all the decisions at *nisi prius*, apparently conflicting, and comes to the conclusion that the decision by all the judges in Wheater's case establishes the principle that a statement not compulsory, made by a party not at the time a prisoner under a criminal charge, is admissible in evidence against him, although it is made upon oath. (*Joy on Confessions*, § 8, 62.)

It is now regarded as a well settled rule, and recognized in the elementary books, that where a witness answers questions upon examination on a trial tending to criminate himself, and to which he might have demurred, his answers may be used for all purposes. (2 *Starkie's Ev.* 50; *Roscoe's Cr. Ev.* 45.) Such answers are deemed voluntary, because the witness may refuse to answer any question tending to criminate him. (1 *Green. Ev.* § 225.) If, however, he should be compelled to answer after claiming his privilege, his answer will be deemed compulsory, and can not be given in evidence against him.

Where the evidence offered has been rejected on the ground that the statement was made when the prisoner was in custody charged with crime, as in Wheeley's case and Owen's case, it seems to me clear that it was properly excluded. Because these were cases of the examination of a prisoner, not of a witness. In such cases it is a *judicial* examination, and it should not be on oath, and certain precautions for the protection of the accused are always observed. In this state such examinations are regulated by statute. (2 *R. S.* 2 ed. 794.) But neither is the statute, nor were the common law rules of which it is declaratory, applicable to any examination except that of a person brought before a magistrate on a charge of crime. All other examinations are classified as *extra judicial*, (*Green. Ev.* 216,) and are to be conducted like other cases of the examination of witnesses.

The People *v.* Hendrickson.

It is evident that in deciding the case of Lewis, above cited, the mind of the presiding judge was influenced to some extent by the supposition, that the facts peculiar to it gave to the testimony the character of a judicial examination, for Baron Gurney lays stress upon the facts that the deposition was made at the same time as all the other depositions on which she was committed, and on the same day on which she was committed. In both these resemblances to a judicial examination, the case of Lewis differs from that now before us; for Hendrickson was arrested on a complaint made before a different magistrate, and on a subsequent day. It is unnecessary, therefore, to express an opinion as to the soundness of the reasons given by Baron Gurney for his decision in the case of Lewis.

The examination of a witness before a coroner's inquest bears even less resemblance to a judicial examination than that taken before a committing magistrate or a grand jury. A coroner's inquest may be held in all cases of sudden death, but an examination before a committing magistrate or a grand jury takes place on complaint made that a crime has been committed. It is only where a person is charged with crime and is examined with regard to the truth of such charge, that his examination can be considered judicial.

In the case of the State agt. Broughton, (7 *Iredell's Rep.* 96,) decided in North Carolina in 1846, where the grand jury were investigating an offence with a view to discover the perpetrator, and the person who was subsequently indicted was examined before them on oath and charged another with the commission of the offence, it was held that the examination might be given in evidence against the prisoner on the trial of his indictment. RUFFIN, Ch J., said, however, that if the evidence given by the prisoner had been a confession of his guilt, and the grand jury had found a presentment on it, the court would have held that it could not be given in evidence against him. It is not material to the decision of this case to inquire whether the chief justice was right or not in the distinction he made between a confession and a statement not a confession, because neither in that case nor in the one now before us was there any confession. Both statements tended to turn attention away from the witness. I am inclined, however, to think the chief justice erred in the case of Broughton, in the reason assigned for his decision. For the law seems to be that the rule as to confessions applies not only to direct confessions, but to every other declaration tending to implicate the prisoner in the crime charged, even though in terms it is an accusation of another, or a refusal to confess. (*Green. Ev.* § 219, note 2, and cases there cited.) But while the decision in the case of Broughton is in accordance with the ruling in the case before us, the reason given for that decision, if it be erroneous, does not conflict with such ruling.

Independent of any supposed authority, I do not see how, upon principle, the evidence of a witness not in custody and not charged with crime, taken either on a coroner's inquest, or before a committing magistrate or a grand jury, could be rejected. It ought not to be excluded on the ground that it was taken on oath. That reason would exclude also the statements of witnesses on the trials of issues. The evidence is certainly none the less reliable because taken under the solemnity of an oath. No injustice is done to

the witness, for he was not bound to criminate himself, or to answer in regard to any circumstance tending to do so. If it is a good ground of exclusion that the statement was made as a witness on oath, the rule of law that protects a witness from criminating himself is of no value, and may at once be abrogated. The rule was adopted upon the supposition that the answer might be introduced in evidence against the witness. If it can not be, the witness has no longer any reason for claiming his privilege.

Nor can the exclusion of the evidence depend on the question whether there was any suspicion of the guilt of the witness lurking in the breast of any person at the time the testimony was taken. That would be the most dangerous of all tests, as well because of the readiness with which proof of such suspicion might be procured, as of the impossibility of refuting it. Besides, the witness might have no knowledge of the existence of any suspciion, so that his mind could not be affected or his testimony influenced by it. It is only when he is charged with crime and examined on such charge, that there is good reason for treating him as a party to the proceeding. The common law has been as tender of the rights of witnesses as of parties.

It is the policy of the common law never to compel a person to criminate himself. That policy secures as well to a witness as to a party the privilege of declining to answer. The former is supposed to know his rights—the latter is to be specially instructed in regard to them by the presiding magistrate. But if either fail to avail himself of the privilege, his answer is deemed voluntary, and may be used as evidence.

It is only upon a judicial examination, viz.: in the case provided for by statute where the prisoner is brought before a magistrate charged with crime, that the preliminaries required by statute are to be observed, and the examination taken without oath. All other examinations are *extra judicial.* The former is the examination of a party, the latter of a witness. In all cases, as well before coroner's inquests as on the trial of issues in court, when the witness is not under arrest, or is not before the officer on a charge of crime, he stands on the same footing as other witnesses. He may refuse to answer and his answers are to be deemed voluntary, unless he is compelled to answer after having declined to do so; in the latter case only will they be deemed compulsory and excluded. Applying these rules to the case before us, Hendrickson's answers before the coroner's inquest were voluntary, and were properly received as evidence against him

II. The second ground on which the prisoner asks a reversal of the judgment is, that the will of Lawrence Van Deusen, the father of the deceased, was improperly admitted in evidence. The will was dated 1st November, 1851, and by it the testator devised all his property to his wife for life, and after her death to his three children, Lawrence Van Deusen, Maria Hendrickson, (the deceased,) and Susannah Hungerford, one moiety to Lawrence Van Deusen, and the remaining moiety to be equally divided between Maria Hendrickson and Susannah Hungerford. By the will, therefore, the deceased would have recieved one fourth part of the estate after the death of her mother. This evidence was received as bearing upon the question of motive. If it

The People *v.* Hendrickson.

tended, in the least, to show that the prisoner had been disappointed in the pecuniary expectations he had entertained from his alliance with the family, in not being able to realize them till after the death of his wife's mother, and then not in an equal proportion with the brother; or, if it tended to show how little property he might expect from his wife, if she lived—in either case whether the supposed motives was resentment or avarice, it was properly received. It was competent to show whether the prisoner would gain or lose by the death of the deceased, and to compare the small amount expected to be realized at a distant day with the intermediate burden of her maintenance. Taken in connection with the previous testimony, tending to show a want of affection on the part of the prisoner toward his wife, this evidence was clearly admissible. Considerable latitude is allowed on the question of motive. Just in proportion to the depravity of the mind, would a motive be trifling and insignificant, which might prompt to the commission of a great crime. We can never say the motive was adequate to the offence; for human minds would differ in their ideas of adequacy, according to their own estimate of the enormity of crime, and a virtuous mind would find no mo tive sufficient to justify the felonious taking of human life.

I think the evidence of the will was properly received. It was the province of the jury to determine the weight to which it was entitled.

My conclusion is, that there was no error committed on the trial, and that the judgment of the supreme court should be affirmed.

DENIO, JOHNSON, RUGGLES AND EDWARDS, JJ., concurred.

SELDEN, J., delivered an opinion expressing his dissent upon both points discussed in the above opinion. ALLEN, J., dissented upon the first ground discussed in the above opinion, and GARDINER, Ch. J., read an opinion concurring upon the first point and dissenting upon the second. Upon each separate point therefore the judgment was affirmed by a vote of 6 to 2.