## M. C. DILL and E. T. RICE v. THE STATE.

1. JURY—TALESMEN.—When, after a special *venire* has been exhausted, talesmen are to be summoned to complete the jury, the judge is not required by the Code to caution the sheriff to summon only such persons as are legally qualified to serve as jurors, informing the sheriff what the qualifications are. This duty is enjoined on the judge when he orders the special *venire*, but not with respect to talesmen; yet in capital cases it is well for the judge to give the caution, whether asked to do so or not.

2. EVIDENCE.—Article 648 of the Code of Criminal Procedure (Pasc. Dig., Art. 3113) has not abrogated that rule of the common law which disqualifies husband and wife from testifying against each other except in cases of personal injury inflicted by one upon the other; and this rule disqualifies either of them as a witness against a co-defendant of the other, jointly on trial with him or her.

3. SAME.—B., D., and R. were jointly indicted for murder, and jointly put on trial. In the course of the trial a *nolle prosequi* was entered as to B., and he was examined as a witness for the state; but prior to the *nolle prosequi* his wife was allowed to testify for the state, over objection by her husband's co-defendants. *Held*, that she was not a competent witness for the state at the time she was examined, and the subsequent *nolle prosequi* did not cure the error committed in admitting her testimony. Had the *nolle prosequi* been entered before she was offered as a witness for the state, her testimony would have been admissible against the defendants still on trial.

4. PLEADING.—When there is uncertainty as to the mode in which a homicide was committed, it is good pleading to frame the indictment with as many counts as are deemed necessary to meet the evidence; and the district attorney should not be required to elect on which count he will proceed to trial.

5. EVIDENCE—CORROBORATION OF AN ACCOMPLICE.—The wife of an accomplice is a competent witness to corroborate his testimony.

6. SAME.—The evidence of an accomplice must be corroborated, not merely as to the commission of the crime, but also by evidence of the fact that the accused was engaged in the commission of it.

7. SAME.—Two defendants on trial asked the court to charge the jury that if an accomplice's evidence against one of them had been corroborated, but not his evidence against the other, the corroboration was not sufficient as to both or either. *Held*, that the request was correctly refused.

8. EVIDENCE OF MOTIVE.—When the crime has been proved, and the circumstances point to the accused as the perpetrator, facts tending to show a motive, though remote, are admissible in evidence; but the jury should exercise great caution in attaching importance to this species of proof.

9. AN APPLICATION for a third continuance is defective if it fails to show what was done with an attachment issued for the witness whose absence is the alleged cause of the application.

APPEAL from the Criminal District Court of the city of Dallas. Tried below before the Hon. S. HARE.

On the 27th of January, 1875, an indictment was filed in the criminal district court of the city of Dallas, charging the two appellants and William Bell with the murder of Reuben Johnson on the 27th day of December, 1874. The indictment contained two counts, one of which charged the murder to have been perpetrated by cutting the throat of deceased, and the other that it was committed by hanging. In December, 1875, the accused were jointly put upon trial, which resulted in a *nolle prosequi* as to Bell, and a verdict of murder in the first degree against the appellants, Dill and Rice, but commuting the punishment of the latter to confinement for life in the penitentiary.

The first witness for the state was George W. Neeley, who testified that he knew the deceased in his life-time, and on the 20th of January, 1875, saw and examined his dead body, which was found in Dallas county, about a mile from Dill's house, a little over a mile from Rice's, and something less than a mile from Bell's. It was found under a small overhanging tree, the neck showing the impress of a rope, and appearing to have been broken, the throat cut, the shoulder bruised, and the wrists showing the marks of a string or rope. On the tree, some eight or ten feet from the ground, the bark was scratched off as though a rope had been drawn over it. The wind-pipe was severed and the throat cut nearly to the bone.

Mrs. Reed, witness for the state, knew the deceased and saw him last on the last Sunday night of 1874, when he was at the house of witness and her husband, in the same neighborhood where the accused lived. About twelve o'clock

that night he was taken from the house by three men, one of whom asked if Reuben Johnson was there, and on witness answering that he was, told witness to tell him to come out. Johnson got up out of bed, looked out, and said, "Wait till I get my clothes on," and then one of the men said, "You are my prisoner; your horse is in Dill's lot." The man also said, "Tie him;" whereupon Johnson replied that it was no use, as he would go with them. Witness heard them tying him. Knew both Rice and Dill, and by the voice recognized Rice as the one who did the talking. Neither of the others spoke. The men took Johnson off, and witness never saw him again until after he was dead. They took him off in the direction of the place where his body was found. Witness saw Rice on the next evening after Johnson was taken off, and then told him that Johnson had been carried away by three men; and he asked witness if she had seen them, to which she replied that she had not. Rice said that if Johnson was killed it was no loss to any one, as he was no account to himself or any one else.

The opinion of the court states such other facts as are relevant to the rulings.

*H. L. Ray, J. M. Thurmond,* and *W. H. Young,* for the appellant Dill.

*Payne & Payne,* for the appellant Rice.

*A. J. Peeler,* Assistant Attorney General, for the State.

ECTOR, Presiding Judge. Marion C. Dill, Elijah T. Rice, and William Bell were indicted in the criminal district court of Dallas city for the murder of Reuben Johnson. The case was twice continued by the defendants. At the December term, 1875, of the court, the appellants, Dill and Rice, each made a third application for continuance, which applications

were overruled by the court. During the trial, on the application of the district attorney, a *nolle prosequi* was entered as to the defendant Bell. Bell was then examined as a witness for the state. The appellant Dill was convicted of murder in the first degree, and adjudged to be hanged, and the appellant Rice of murder in the first degree, and his punishment assessed at confinement in the penitentiary for life.

In the decision we have arrived at we do not deem it necessary to notice in this opinion all of the points presented by the appellants in their bill of exceptions.

It appears from the record that the special *venire* of persons summoned for the trial of the cause was exhausted before a jury was formed. Talesmen were then summoned, upon the verbal order of the court, for the completion of the jury. The attorneys for the appellants asked the court, in making the order, to direct the sheriff to summon such men as have the legal qualifications to serve as jurors, and to inform him what those qualifications are, which the court refused to do. To this refusal on the part of the court the appellants excepted, and took a bill of exceptions.

There is nothing in our Code of Criminal Procedure, or statutes, requiring the court to give the instructions asked. Article 3018, Paschal's Digest, is as follows: " The court, in granting the order (for a special *venire facias*), shall, in every case, caution and direct the sheriff to summon such men as have legal qualifications to serve on juries, informing him of what those qualifications are." Article 3030: " Where the list of persons summoned for the trial of a criminal cause is exhausted, by challenges or otherwise, or where the persons summoned do not attend, talesmen shall be summoned, upon the verbal order of the court, until the jury is completed."

In all capital cases it would be well for the court, whether asked or not, to give such instructions ; but a failure on his

part to do it would not authorize a reversal of the judgment, especially when it does not appear from the record that any injustice was done to the defendant by the sheriff in summoning these talesmen.

On the trial of the cause Margaret Bell was introduced as a witness for the state, and testified that she was the wife of William Bell, who was indicted in this cause with the appellants, Dill and Rice. The appellants, Dill and Rice, then objected to the said Margaret Bell testifying further in this cause: " 1st, because she was the wife of one of the defendants; 2d, because she was the wife of an accomplice in the charge contained in the indictment; 3d, because no *nolle prosequi* or dismissal of said cause as to the defendant Bell had been ordered by the court; and, 4th, because William Bell then stood indicted for the same offense about which she was called to testify." The court overruled the objections and permitted her to testify, to which the appellants excepted, and took a bill of exceptions.

Under the rules of the common law neither the husband nor the wife were competent witnesses for or against each other, except in cases of personal injury committed by one upon the other. And we believe that the rule has been well settled, where the common law has not been changed by statute, that a wife is not a competent witness against any co-defendant then on trial with her husband.

Mr. Roscoe, in his work on Criminal Evidence, says: " Where several persons are indicted together, an attempt is sometimes made to call the wife of one prisoner as evidence for or against another. In very few cases has this been allowed to be done." After citing a number of opinions, he says there is a great preponderance of authority in favor of the proposition that, in no case where the husband is on trial, can the wife be called as a witness. Roscoe on Cr. Ev. 116, 117.

Mr. Wharton lays down the same rule: " Husband and

wife cannot be witnesses for one another, nor regularly against one another; nor against any other person indicted jointly with the husband or wife." *Rex* v. *Smith*, 1 Moo.. C. C. 289; *R.* v. *Hood*, 1 Moo. C. C. 281; *State* v. *Smith*, 2 Ired. 502; *Commonwealth* v. *Robinson*, 1 Gray, 555; Whart. Am. Cr. Law, sec. 767.

Mr. Greenleaf says: "The principle of this rule requires its application to all cases in which the other party is involved; and, therefore, the wife is not a competent witness against any co-defendant tried at the same time with her husband if the testimony concerns the husband." 1 Greenl. on Ev., sec. 335. And Lord Ellenborough, in the case of *Rex* v. *Locker*, 5 Esp. 107, said it was a clear rule of the law of England.

Mr. Greenleaf further says: "Whether the rule may be relaxed so as to admit the wife to testify against her husband, by his consent, the authorities have not agreed. Lord Hardwicke was of the opinion that she was not admissible, even with the husband's consent, and this opinion has been followed in this country." 1 Greenl. on Ev., sec. 340. And this learned author also says that the very great temptation to perjury in such cases ought not to be overlooked. But, further, he remarks that Chief Justice Best, in a case before him (*Peedly* v. *Wellesley*, 3 C. & P. 558), decided to receive the evidence of the wife if the husband consented.

During the trial of five defendants on an indictment for an assault and battery the counsel moved that the wife of one of them might be examined as a witness for the other four; but the court ruled, unanimously, that she could not be examined, and in delivering the opinion the court say: "To have had the benefit of her testimony they should have moved to be tried separately from the husband, which the court could have granted had this been assigned as a reason for the motion." *Commonwealth* v. *Eastland*, 1 Mass. 15.

It is, however, insisted by the assistant attorney general that the rule of the common law has been changed in this respect in Texas.

Article 638 of our Code of Criminal Procedure (Pasc. Dig., Art. 3103) provides that "the rules of evidence known to the common law of England, both in civil and criminal cases, shall govern in the trial of criminal actions in this state, except where they are in conflict with the provisions of this Code or of some statute of this state."

Article 648 (Pasc. Dig., Art. 3113): "No rule of the common law which excludes a witness on account of the existence of any particular relationship to the defendant, as of husband and wife, shall have any force, except where it is in express accordance with the provisions of this Code, or of some other statutory law of the state. The husband and wife can in no case testify against each other, except in a criminal prosecution for an offense committed by one against the other; but they may in a criminal prosecution be witnesses for each other."

It is further contended on the part of the state that when the *nolle prosequi* was entered as to the defendant William Bell he became a competent witness, and that if Mrs. Bell had then been placed on the stand there could have been no objection to her testimony; for that, as to the remaining defendants then on trial, she sustained no disqualifying relation, and stood disinterested, but that if there were any good objections to the testimony of Mrs. Bell at the time it was delivered, they were removed when a *nolle prosequi* was entered as to her husband. After mature reflection, and a careful examination of the authorities, we do not believe that she was a competent witness for the state against the appellants at the time she testified. The construction we put upon Article 3113 is that it was never intended so to change the rules of the common law as to make her a competent witness to testify against other defendants on trial

with her husband, as in this case; for the Article of the Code relied on says the husband and wife can in no case testify against each other, except in a criminal prosecution for an offense committed by one against the other. If her testimony was not competent at the time it was given, the entering of the *nolle prosequi* as to her husband did not remove the objections to it. After the *nolle prosequi* was entered, she might have been called to the stand as a witness for the state, and her testimony would have been admissible. But this was not done.

The testimony of Mrs. Bell was doubtless offered to show that Dill, Rice, and Bell were together on the night of the 27th of December, a short time before the murder of Reuben Johnson, and left her house together, under circumstances which the state would attempt to show were not likely to have occurred if they had not been acting in concert, and guilty of the offense charged. No witness identified the three persons—Dill, Rice, and Bell—as being together on the night spoken of, except Bell and his wife. Reuben Johnson was at the house of William Reed. Clem. Reed, the wife of William Reed, testifies that three men came to her house on the night of the 27th of December, 1874, called out Reuben Johnson, tied him, and took him off; that she recognized Rice as one of these three men by his voice. Johnson's dead body was found not far from her house, showing evidence that he had been hung and his throat cut.

After the evidence had concluded, the appellants asked the court to compel the district attorney to elect on which count of the indictment he would proceed and ask a verdict. This the court declined to do, and this was not an error. A good pleader will insert as many counts in an indictment as he believes are necessary to provide for every possible contingency in the evidence. The law permits several modes of death to be charged in the same indictment. The indict-

ment is but the charge of the grand jury, with as much certainty and precision as they are able to present from the evidence. The grand jury may be well satisfied that the homicide was committed, but not satisfied with the mode of death; and, in order to meet the evidence as to the mode of death as it may be developed on the trial, they are allowed to set out the mode in different counts, and then if any one of them is proved it is sufficient to support the indictment. It is also admissible in the same count to charge the mode of death to have been by hanging with a rope and cutting with a knife. See Whart. Prec. of Indict. and Pl. 124; also, Whart. Am. Cr. Law, 421–424.

We do not find any error in the charge of the law given to the jury, or in the refusal of the court to give the special charges asked by the appellants. The court was asked by the appellants to charge the jury that "corroboration of the testimony of an accomplice by the testimony of his wife is no legal corroboration, is insufficient, and adds no weight or credibility to the statements of the accomplice." The attorneys for the appellants have cited no authority to show that this charge should have been given. Mr. Phillips, in his able work on Evidence, says: "It may often happen that the evidence of the wife, when admissible at all, is so free from all suspicion, so independent of the evidence of the husband, so manifestly unconcerted and uncontrived, and so undesignedly corroborative of his evidence, that it might be proper not to consider the accomplice and his wife as one person, but to act upon the evidence as sufficient evidence."

In the case of *Hoskins* v. *The People*, 15 N. Y. 345, the court say that, when an accomplice and his wife are witnesses against the prisoner, it is not error in the judge to instruc the jury that they may take the testimony of the wife into consideration as corroborating that of her husband, the accomplice. The same has been held by the court in the case of *The State* v. *Moore*, 25 Iowa, 128.

The rule of evidence in this state in regard to the confirmation required to support the evidence of an accomplice, to authorize a conviction of a prisoner, was correctly set forth in the charge of the court. Unless the evidence of an accomplice be confirmed, not only as to the circumstance of the crime, but by evidence showing that the accused was engaged in the transaction "which forms the subject-matter of the charge under investigation," it is not sufficient.

When an accomplice speaks as to the guilt of two or more persons, and his testimony is confirmed as to one or more of them, and not as to all, the jury would not be authorized to act on his testimony alone as to the prisoner in respect of whom he is not confirmed. At the same time we do not think it would be proper for the court to instruct the jury that, if the testimony of the accomplice was confirmed as to one or more, and not to all, they should acquit all the defendants. The appellants asked the court to charge the jury that, "if the accomplice is corroborated in his statement in relation to one defendant, and not the other, such corroboration is insufficient as to both or either of the defendants," which special charge the court correctly refused to give.

The district attorney, on the part of the state, introduced an indictment against Marion C. Dill, and the records of said criminal district court in the case (No. 2319) of *The State* v. *Marion Dill*, the charge in the indictment being "attempting to induce Reuben Johnson to commit perjury." The indictment and the record in that case were allowed to go to the jury by the judge below on the trial of the cause now under consideration. We conclude that this evidence was offered to show a motive on the part of Dill to put Reuben Johnson out of the way.

Where it is shown that a crime has been committed, and the circumstances point to the accused, facts tending to

show a motive, although remote, are admissible in evidence. The jury, however, cannot be too cautious with respect to the importance which they attach to this species of testimony. Evidence of the state of feeling existing between the prisoner and deceased, before and at the time of the killing, in cases of homicide is admissible.

On the trial of a husband for the murder of his wife, the will of his father-in-law was admitted in evidence to show that the expectations of property which he might have entertained had been disappointed. *Hendrickson* v. *The People*, 1 Park. Cr. 406.

Other testimony in the record shows that a term of the court in which the said indictment against Dill was pending would soon commence, and that Reuben Johnson was there, perhaps, to be a witness on the part of the state. In view of all the other testimony in this case, we do not think the court erred in overruling the appellants' motion to withdraw the said indictment and records as evidence from the jury.

It is insisted that appellants' applications for continuance were improperly overruled. This was the third application for a continuance, and was defective in not showing what was done with the attachments for the defendants' witness named therein after they were issued, nor to whom delivered; which, at the late Austin term, this court decided, in the case of *Murry* v. *The State*, to be necessary. This is no new rule. Our supreme court laid down the same rule. They say: "An affidavit for continuance for want of witnesses who reside out of the county is insufficient which fails to show the date of the issuance of the attachment for such witnesses, and to whom the attachments were delivered. *Townsend* v. *The State*, 41 Texas, 134.

Without expressing an opinion as to whether or not there was sufficient evidence to support the verdict of the jury,

and not being able to determine that the jury, in forming their verdict, were not influenced to the prejudice of the appellants by the testimony of Mrs. Bell, the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*