Allen *vs.* Woodson *et al.*

JOSEPH ALLEN, administrator, plaintiff in error, *vs.* MARTHA F. WOODSON, executrix, *et al.*, defendants in error.

1. After a bill seeking a discovery has been answered the complainant cannot amend his bill so as to waive discovery, and thus get clear of the defendant's answer.
2. It is not error in the Court to call the attention of the jury to the importance of the case, and trouble it has given, and to suggest the desirableness of disposing of it by a final verdict.
3. When a receipt acknowledged a certain sum in full of certain described promissory notes, and in full of all demands, the general words, though they do not enlarge the particular words as to what transpired at the time, yet they do import and may be used to prove that the party giving the receipt had, at the time, no other demands against him to whom the receipt was given.
4. When a bill was filed against the administrator of a deceased partner seeking an account of certain partnership funds which it was alleged had been collected by the partner and misapplied, and pending the suit and after the 1st of January, 1870, the bill was amended so as to charge, in addition, that said deceased partner had also received to his own use the rents of certain real estate belonging to the partnership, and that he had not accounted therefor :
*Held*, That the amendment did not introduce a new cause of action but only added an item to the original cause, and if the plea of the statute of limitations was not good to the original suit it was not good to the amendment.
5. The verdict of the jury in this case is supported by the evidence and ought not to be disturbed, and this being so the error of the Court, as to the statute of limitations in its application to the amendment, is immaterial.

Equity. Discovery. Amendment. Charge of Court. Jury. Receipt. Before ROBERT P. TRIPPE, Esq., Judge *pro hac vice*. Upson Superior Court. May Term, 1872.

Joseph Allen, as administrator of Xenophon Bowdre, deceased, filed his bill against Martha F. Woodson, as executrix,

and Benjamin Bethel, as executor, of William D. Woodson, deceased, and Emma R. Redding, as administratrix of Thomas J. Redding, deceased, making, substantially, the following case :

On or about the 8th of August, 1859, William D. Woodson and Xenophon Bowdre were partners doing a mercantile business in the town of Thomaston, under the firm name of Woodson & Bowdre. They had carried on said business under said firm name in said place for several years prior to that date. On said day the partnership was dissolved by mutual consent, and Bowdre retired from business, leaving all of the assets of said firm in the hands of Woodson. Soon after the dissolution aforesaid, Woodson formed a partnership with one Thomas J. Redding, under the firm name of Woodson & Redding, and the said last named firm did business in said place from some time in August, 1859, to August, 1864, when the said copartnership was dissolved by the death of Redding. During the continuance of the last named firm, Woodson, having in possession the assets belonging to the late firm of Woodson & Bowdre, carried into the business of the said Woodson & Redding a large amount of said assets, with the knowledge and consent of Redding. Bowdre knew nothing of the use of the assets of Woodson & Bowdre by Woodson & Redding, nor the amount of the same, nor were these facts known to complainant until after he became the administrator of Bowdre, and the amount of said indebtedness was not known to complainant at all. Not knowing the amount so transferred and used by them, and believing and alleging that the books were destroyed, complainant prayed that defendants should discover the amount, and should particularly discover any and all evidences of the use of the money as charged, and prayed that defendants should account and settle fully as to all of the affairs and assets of Woodson & Bowdre which had gone into the hands of Woodson & Redding as charged, or that had been used by them, and prayed that defendants should be decreed to pay over to complainant, as administrator, his intestate's half of said assets so used.

Allen *vs.* Woodson *et al.*

The bill was filed in October, 1868. Subsequently, on the 20th of October, 1871, it was amended by praying specifically for payments of rents due for the use by Woodson & Redding of the store-house belonging to Woodson & Bowdre. This amendment was demurred to and disallowed, because it was filed after January 1st, 1870.

At the May term of 1872, complainant having ascertained that the books of Woodson & Redding were in existence, and that said books showed the amount of the assets of Woodson & Bowdre used by Woodson & Redding, except the use of the store-house, and being able to prove the use of the store-house, without resorting to the conscience of defendants, amended his bill by striking out the prayer for discovery from either or all of the defendants. This amendment the Court refused to allow for the purpose of waiving the answers of the defendants.

The answer of the defendant, Emma R. Redding, administratrix, is unnecessary to an understanding of the questions passed upon by the Court.

Martha F. Woodson, executrix, answered, substantially, as follows:

She admits the facts as to the copartnership of Woodson & Bowdre up to 1859, the dissolution and Bowdre's retiring; admits the formation of the partnership between Woodson & Redding, and its continuance to the death of Redding in August, 1864; she admits the death of Woodson, and that she is the executrix; she discloses the fact that the books of Woodson & Redding are in existence, and are in her possession, but she denies that they furnish any evidence whatever of any indebtedness on the part of Woodson & Redding to Woodson & Bowdre; she denies any indebtedness on the part of Woodson & Redding to Woodson & Bowdre, in any manner, and gives as a reason that, on the 1st day of September, 1866, Woodson & Bowdre, only a few days before the death of Woodson, had a full and final settlement of all matters between them or the firms, and tenders a receipt, claiming it as evidence of the same; she admits, that at the time of the

death of Woodson, in 1866, the firm of Woodson & Redding was indebted to the firm of Woodson & Bowdre, but says that the same was evidenced by two notes, or merchants' tickets ; that Woodson, on his death-bed, told her that these two notes were due by Woodson & Redding to Woodson & Bowdre ; she admits that Woodson died in September, 1866, and that after her qualification as executrix, to-wit: in 1868, she allowed her co-executor, Benjamin Bethel, (since resigned), to pay the one-half of the principal and interest on said notes, to-wit: about $1,400 00, or some such sum, and sets up this as a payment in full of all matters between them or the said firms, and tenders the receipt of complainant as evidence of a full settlement ; she says that the books of Woodson & Bowdre were kept in the store of Woodson & Redding, and that the collection of the accounts, notes, etc., was given to Bowdre ; that he rode several days endeavoring to make collections, but she does not know that he ever collected one dollar ; she denies that Woodson ever collected any money which he did not properly account for, and giving as a reason for so stating, that on one occasion she knew him to collect $122 00 and divide it with Bowdre ; she denies that Woodson & Redding ever borrowed any money of Woodson & Bowdre, or that they ever used any of the money of Woodson & Bowdre.

Benjamin Bethel, executor of Woodson, answered, in substance, as follows : He knew nothing of any indebtedness on the part of Woodson & Redding to Woodson & Bowdre, except that which was evidenced by a due-bill and a merchants' ticket found in the papers of Woodson & Bowdre, and one-half of which was paid to complainant, in 1868. Woodson & Bowdre had some uncollected notes and accounts against persons with whom they traded as merchants, and after the qualification of Bethel, as executor, Bowdre and himself agreed to divide them ; the division was made, all but delivering to Bowdre his share of the uncollected demands, and Bowdre's death prevented a complete settlement by the division of these assets. At this time nothing else was attempted to be settled but a division of the assets of Woodson & Bowdre as afore-

said, and no claim was made by Bowdre of any amount being due by Woodson & Redding to Woodson & Bowdre. After the death of Bowdre, Bethel divided the notes and accounts belonging to Woodson & Bowdre with complainant.

Subsequently Mrs. Woodson filed an explanatory answer, in substance as follows: She says the books of Woodson & Bowdre, after the dissolution, were kept in the store of Woodson & Redding; that they were open to the inspection of Bowdre as well as Woodson, and that she is satisfied that Bowdre collected a large amount of said assets and appropriated such collections to his own use; she denies that Woodson ever collected or used any of said assets, but admits that from a careful examination of the books of Woodson & Redding, she thinks that they do show that Woodson & Redding received from, or borrowed money of Woodson & Bowdre; she says these transactions were mutual between the two firms, and she thinks they were all settled up before the death of said Woodson; she says she is strengthened in this supposition from the fact that, in the year 1864, the books of Woodson & Bowdre being destroyed, they were unable to make an accurate settlement, and they agreed upon a plan of dividing the money on hand, and such assets as might be collected, as fast as collected, and that a few days thereafter Bowdre receipted Woodson & Bowdre, and Woodson receipted Woodson & Bowdre, each for $1,452 35; she admits that she cannot say that the foregoing is a settlement in full of all matters, but she is inclined to think it is so, and pleads this settlement in bar of any recovery; she says she has personal knowledge of money collected for Woodson & Bowdre being equally divided between them, but she does not give any amount; she admits that the books of Woodson & Redding do show entries of indebtedness from Woodson & Redding to Woodson & Bowdre, which entries she says she did not understand when she filed her first answer, and she thinks these entries, if they show any indebtedness at all, are over-balanced by other entries in favor of Woodson & Redding and against Woodson & Bowdre; she says the date of the last entry,

showing indebtedness, was in 1860, and pleads the statute of limitations; she says Woodson had money sufficient to advance his full share of the capital stock in the firm of Woodson & Redding, and had no necessity for borrowing or using the money of Woodson & Bowdre, in said firm business of Woodson & Redding; she says that on the 1st day of September, 1866, two notes held by Xenophon Bowdre against W. D. Woodson, individually, for several thousand dollars, were settled in the following manner: An account held by William D. Woodson, individually, against Xenophon Bowdre, and an account in favor of Woodson & Redding against Xenophon Bowdre, individually, were brought against the two notes belonging to Bowdre, and the balance then due Bowdre on the two notes was paid by Woodson in tobacco; she insists that this shall be considered as a final settlement of all matters between them, both as individuals and as members of the two firms, and makes an exhibit of this settlement, pleading the same in bar of a recovery; she says she made a mistake in her original answer, wherein she said that the due-bill and merchants' ticket or memorandum paid by Bethel to complainant, were due at the death of Woodson, and wherein she said that Woodson so told her on his death-bed; she says she intended to say that immediately after the settlement referred to, in 1866, Woodson called her to his bed-side and told her that the two notes just settled was all that he owed; that she so intended to say, but her draftsman made her say otherwise; she avers that said due-bill and merchants' ticket were not due and unpaid; that they were imprudently paid, prays that complainant may be decreed to refund the amount he received on them.

Pending the litigation Bethel was discharged from the trust, as executor, and having fully accounted to his co-executrix, the bill was dismissed as to him.

The evidence introduced upon the trial was voluminous and conflicting. The books of Woodson & Redding were claimed by complainant to show an indebtedness to Woodson & Bowdre of between $4,000 00 and $5,000 00. It was

claimed by defendants that the same books showed that this indebtedness, if it ever existed, had been discharged.

It will be observed, that the defendants set up, as a bar to the complainant's claim, two settlements, one of February 15th, 1864, and the other of September 1st, 1866.

The instruments introduced to support the first were as follows:

" GEORGIA—Upson County.

" This Indenture, made this, the fifteenth of February, in the year of our Lord one thousand eight hundred and sixty-four, between W. D. Woodson, of the county and State aforesaid, of the one part, and Xenophon Bowdre, of the same place, of the other part, is such that, whereas, the said parties, in the year of our Lord one thousand eight hundred and forty-two, did form a copartnership for the sale and purchase of goods, wares and merchandise, under the firm name and style of Bowdre & Woodson, said firm having its place of business at Thomaston, in said county, and did there afterwards carry on said business until the year of our Lord one thousand eight hundred and fifty-one, when the same was discontinued; and, whereas, the said parties, in the year of our Lord one thousand eight hundred and fifty-four, commenced similar business in said town under the firm name and style of Woodson & Bowdre, which was thenceforward continued until the year of our Lord one thousand eight hundred and fifty-nine, when the said William D. Woodson purchased from said Xenophon Bowdre his, the said Xenophon Bowdre's, interest in the stock of goods then on hand, the said partnership thereby becoming dissolved; and, whereas, before a settlement between said parties of and concerning their said business had taken place, to-wit: in the year of our Lord one thousand eight hundred and sixty-three, the books of said concern were destroyed by fire, and the data which would have enabled said parties to have made said settlement with accuracy thereby lost, and it being the desire of said parties, in the absence of such data, to effect such a settlement as shall and will, in their opinion, approach to equity and do justice—

"THIS INDENTURE WITNESSETH, That, in consideration of the present, and to effect the object aforesaid, the said parties have mutually agreed, and by these presents do agree, to the following method to be pursued in settlement between them of the business of said firm, that is to say : all moneys on hand belonging to said firm shall be equally divided between said parties, and receipts in writing of the parties respectively be interchangeably delivered therefor. All assets remaining of said concern is jointly owned in equal proportions by the parties, and may be collected or reduced to money by them, or either of them, and all moneys realized therefrom shall be divided and receipts delivered as aforesaid.

In testimony whereof the parties have hereto set their respective hands and seals, on the day and year above written.

"W. D. WOODSON, [L. S.]
"X. BOWDRE, [L. S.]"

"Done in duplicate in presence of
"THOMAS CAUTHORN,
"E. R. ATWATER, J. I. C."

"THOMASTON, February 23d, 1864.

"Received of Woodson & Bowdre $1,452 35, value received. This being in accordance with the agreement entered into between them, bearing date this 15th instant.

(Signed)        X. BOWDRE."

Also, a similar receipt signed by William D. Woodson.

In reply to this alleged settlement the complainant introduced the following letter :

"THOMASTON, GA., May 23d, 1865.

"*Mrs. E. C. Redding, Macon, Ga.:*

"MADAM—The coin of which you write was in amount a little over $600 00, and was last winter appropriated in part payment for house-rent for the brick store.

"The firm of W. & R. was due me some $1,400 00 up to the time of the fire, for the rent of that store, and the above amount of coin is all that I have received. The first disposition to be made of the assets of our business is to pay the

debts of the concern ; of these there is owing in New York about $1,000 00 ; in Savannah some $300 00 ; to Maj. Cobb, of this place, $500 00 for borrowed money, of which I knew nothing until the past two months, and to Woodson & Bowdre an account for borrowed money, and for store rent, (the dry goods store), the amount I cannot state without referring to our books. These amounts, with the balance due me, are about all the debts I am aware of at present.

" Respectfully,           W. D. WOODSON."

The instruments introduced to support the settlement of September 1st, 1866, were as follows :

" Received of William D. Woodson $2,485 50, in full for the balance due me on two notes given by the said Woodson, one for $2,578 23, dated August 8th, 1859, and due at six months ; the other for $8,613 16, dated August 8th, 1859, and due twelve months after date, with the interest thereon after deducting credits on said notes and accounts held by said .Woodson against me, and in full of all demands—this being a final settlement made myself, E. A. Flewellen and William A. Cobb for the said Woodson, the above payment being in sixteen boxes tobacco, weighing net sixteen hundred and fifty pounds at $1 50 per pound.

(Signed)                " X. BOWDRE.
" September 1st, 1866."

" X. Bowdre to W. D. Woodson—

" Sixteen boxes tobacco, weighing one thousand six hundred and fifty-seven pounds, at $1 50 per pound, $2,485 50, marked D. Jones, Rose Bud. The above settled in full. Settlement between the said Woodson.

(Signed)                " WILLIAM A. COBB,
                " E. A. FLEWELLEN.
" September 1st, 1866."

The accounts referred to in said receipt were, one in favor of Woodson, individually, taken from his private memorandum book, and the other in favor of Woodson & Redding.

It was contended by complainant that this settlement did not extend to any matters beyond the two notes specified in the receipt which were given by Woodson, individually, for Bowdre's interest in the stock on hand at the time of the dissolution in August, 1859, and could not be made to cover an indebtedness existing on the part of Woodson & Redding to Woodson & Bowdre.

Upon this point in the case the complainant requested the Court to charge as follows :

" If the settlement and receipt were exclusively of a matter of individual indebtedness of Woodson to Bowdre, individually, then such words as ' in full of all demands,' cannot be extended so as to cover matters not taken in the settlement, existing between Woodson and Bowdre as partners, the one of the firm of Woodson & Redding, and both as partners of the firm of Woodson & Bowdre."

The Court refused the request, and charged as follows :

" If Bowdre gave Woodson a receipt specifying that certain debts between themselves were paid without showing in the receipt that they had anything to do with partnership matters, then the legal meaning and effect of such receipt, without further evidence, would be confined to individual matters, and the words, 'and in full of all demands' in said receipt, would be limited to individual claims or indebtedness. But if, from other testimony, it appears or is proven that one of the debts specified in the receipt was not an individual claim between Woodson and Bowdre, but was between Bowdre on the one side, and Woodson & Redding, as partners, on the other ; and that the payment or receipt of money therein specified to have been made, was not the individual property or money of Woodson, but belonged to the assets of Woodson & Redding, then, although nothing may have been settled at the time the receipt was given, but what was specially stated in the receipt, yet, as such facts, if proven, would enlarge or extend the terms of the receipts beyond their simple legal effect, and would show that more than individual claims were then settled, so those facts may be considered by the jury in constru-

ing the words 'and in full of all demands,' and in determining whether they shall be confined to individual matters, or extended into an acknowledgment by the party giving it, that all claims of Bowdre on Woodson & Redding had been settled and were therein so receipted for or acknowledged. The words in the receipt, 'and in full of all demands,' in this or any other receipt, are not confined to the immediate matter or matters specially mentioned in the receipt, but extend to all liabilities or debts on account against the party to whom it is given, and may be taken in connection with the other evidence as testimony showing the payment of all claims, either as individual or as partnership, so far as the receipt and that other evidence, show it was intended by the parties."

The Court also charged the jury, " that this case had been troublesome and had cost much time and trouble to investigate it, and therefore there should be a verdict."

The complainant excepted to the ruling of the Court refusing to allow the amendment waiving the discovery, to its refusal to allow a recovery for the rents of said real estate, to the aforesaid refusal to charge, and to each of the charges as above set forth.

The jury returned the following verdict : " We, the jury, find for the defendants, and we do further find that the plaintiff pay to Mrs. Martha F. Woodson, executrix of the estate of W. D. Woodson, deceased, the sum of $1,400 13, with interest from January 11th, 1868, that being the amount paid to the plaintiff by Benjamin Bethel, executor of W. D. Woodson, deceased, acting for Woodson & Redding. We also recommend that the cost of suit be equally divided between the complainant and the defendant."

The complainant moved for a new trial upon each of the aforesaid grounds of exception, and because the verdict was contrary to the evidence. The motion was overruled, and complainant excepted.

B. H. HILL & SON; DOYAL & NUNNALLY; JACKSON & CLARKE, for plaintiff in error.

J. J. FLOYD; JOHN P. FORT, for defendants.

McCAY, Judge.

We think most of the argument of the plaintiff in error in this case turns upon their failure to recognize the true nature of their bill, and of what they seek to do. Essentially, the object of this proceeding is to seek an account from the estate of Woodson, of certain assets of Woodson & Bowdre, which, it is charged, came into the hands of Woodson, and remained unaccounted for by him to Bowdre at his, Woodson's, death. The amendment to the bill disclaims all privity between Bowdre and Redding. Redding's estate is only retained in the bill because it is charged that the firm of Woodson & Redding got the benefit of Woodson's misapplications of funds belonging to Woodson & Bowdre. It is, therefore, a *sine qua non* of the complainant's case that Woodson shall be proven to have died indebted to Bowdre on their partnership account. The firm was dissolved in 1859; necessarily its assets were large. They had been partners for years, and, from the amount of the stock on hand, the inference is, that their books covered large amounts. What were the terms of the partnership, what they owed, what was due to them, and what were the relations of each partner, on the books, to the concern, does not appear. The evidence is, that each partner took part in the settlement of the affairs. The books, it is true, were kept in the house occupied by the firm of Woodson & Redding, but the evidence is clear that Bowdre had free access to them, and that he engaged himself in settling up the accounts and collecting the debts due. It is very unfair, under the evidence, to say that the assets were in the sole control of Woodson. The inference to the contrary is very strong; nor does the fact that they were kept at the old store, now occupied by the new firm, alter the case. The parties seem to have remained firm friends, and to have continued to feel mutual confidence; and the place where the books were kept is just where it was proper to keep them if they were to be open to the free inspection of both parties.

Allen *vs.* Woodson *et al.*

The state of this case is simply this: The firm was dissolved, both parties engaged at pleasure in settling up the affairs of the firm, collecting the assets, and paying the debts; they continued to go on thus until 1863, when the store-house, with their books in it, was burned. These books, doubtless, contained all the materials for a full settlement; in them was entered the account of each man with the firm, what debts he had collected, what debts he had paid, and how he stood in all his relations to the firm. Then came the mutual deed, under seal, executed with great solemnity, and reciting the loss of the books, and with them the impossibility of making an accurate settlement. The plain intent of this deed is to declare that, at that time, each owed the firm nothing, that they were even as to what each had got, at least, measurably so, and they mutually declared and covenanted that the remaining assets of *every kind* belonged equally to both. We think this is the meaning and the sole meaning of the deed, to-wit: to declare that, up to that time they were even, each was chargeable to the other, as to the firm assets, nothing; but what was still on hand of every kind was the joint equal property of both. This, as we understand it, is the whole intent and object of this solemn paper, and its very solemnity is significant of its intent. It means simply this: Our dealings have been large, complicated, and continued through many years. We have lost the only means of a perfectly accurate settlement. We are, as nearly as we can judge, about even. We do, therefore, hereby, under our seals, and before two witnesses, covenant that the past shall be buried, and that we are jointly and equally interested in what remains. There is evidence that subsequently to this they divided a considerable sum of money, giving mutual receipts.

Again, in 1866, just before Woodson's death, they meet again, and the notes given by Woodson to Bowdre for the stock of goods are settled. But how? 1st. The amount due, after taking off the credits, is found. 2d. A memorandum account of Woodson against Bowdre, for articles (some $2,400,) since the war is taken off. 3d. An account against Bowdre,

on the books of Woodson & Redding, is taken off.    4th.  The balance due (some $2,500 00) is paid in tobacco, and the receipts of Bowdre is taken, purporting and stating it to be in full of the note, and in full of all demands.

Soon after Woodson dies.  Bowdre states to various persons that he has settled with Woodson; that he has taken tobacco for all Woodson owes him; that he has settled every thing except *the lots*, and soon after he also dies.

Independently of the deed, the receipt and the statements of Bowdre, we think the case for the complainants a very weak one.  Two men have been in partnership for many years, they dissolve, both engage in settling up the affairs, each, doubtless, receives and pays out large sums ; four years after the dissolution the books are destroyed; three years after this both parties die within a few months of each other, friends to the last.  And it is now proposed to charge one to the other, because, on looking into the private papers of that one, (as to Bowdre, the books of Woodson & Redding are private), it is discovered that within a year or two after the dissolution he had funds in hand belonging to the firm, and their private books do not show that he accounted for these funds to his partner.

We think this, even without the evidences of settlement, is very inconclusive matter with which to charge Woodson's estate.  After ten years have passed since the dissolution, it is proposed to lift up the veil which time and war and fire and death have drawn over the affairs of the firm, and seizing upon but one item, to charge Woodson's estate with that.

At last, the entries in Woodson & Redding's book only prove that at that date Woodson had funds of Woodson & Bowdre in his hands—and they would prove this just as clearly if they were fully balanced—that is, if they showed the sums mentioned had been returned to Woodson & Bowdre ; for in the nature of the thing that would only have been returning them to Woodson.  But, in our judgment, the fact that Woodson or Bowdre has, at some time since the dissolution of their firm, had money in hand belonging to the firm,

is a very small matter. Whether the money so on hand is unaccounted for; whether Woodson had or had not a right to use the money for his own purposes, depends on the relations in which he and Bowdre stood towards those assets; and to know this would require a full inquiry into the whole affair. A partner, even of a dissolved firm, does not own in his own right the half of any particular sum of money, or the half of any particular thing; his interest is one-half after a full settlement. And it is impossible to say whether Woodson is to account for this money, unless we know the state of accounts between them.

Suppose, in looking into the papers of Bowdre, it were to be found that early in 1860, he had in hand two or three thousand dollars of the money collected from the firm assets, and that he had used it for his own purposes, would that single fact charge his estate? Could the real rights of the two partners as to any particular sum be settled without a full investigation of the whole?

But if to the inconclusiveness of the whole of the complainant's evidence, there be added the solemn deed, the receipts and the sayings of Bowdre, the proof of a settlement of the whole matter by the parties during their lifetime, seems to us conclusive. Nor is the letter written by Woodson to Mrs. Redding seriously in the way of this. At most, it is wholly uncertain as to amounts, but in any event, its language is not inconsistent with the fact that Woodson & Bowdre were even. The original advance of this money to Woodson & Bowdre was really an advance by Woodson. The name of Woodson & Bowdre was only used to keep the accounts separate. And in this letter Woodson, doubtless used the name of Woodson & Bowdre instead of his own name, for the reason that the advance was thus entered on the books, and it would be giving an extraordinary effect to this private communication from Woodson to Mrs. Redding, to accept it as proof that on a full settlement of the affairs of Woodson & Bowdre, any amount, much less any specific amount, was still due to Bowdre.

With this view of the nature of the complainant's case, and with the consideration that it is necessary for them to establish that on a settlement of the affairs of Woodson & Bowdre, Woodson would be in debt to Bowdre, we see no error in the charge of the Court upon the receipts and deed.

The deed has for its sole purpose to declare that, up to that date, the parties are even as to the firm affairs, and though the receipt is in terms only for the balance due on the two notes, yet the mode in which that balance was found, to-wit: by taking off the two accounts—one personal of Woodson against Bowdre, and the other of Woodson and Redding against Bowdre—gives point and significance to the other words, "in full of all demands," and "on final settlement." If to this be added Bowdre's subsequent statements, we think it was right in the Judge to refuse to say to the jury that the words, in full of all demands, could not be taken to go beyond the special subject, to-wit: the notes.

So far as the receipt is a contract, it can, it is true, go no further than the consideration then passing, to-wit: the amount taken in discharge of the note. But if the facts justify it, the words, in full of all demands, may justly be taken, not that anything else is then satisfied, but as an acknowledgment that nothing else was then due; and, *prima facie*, we think it has that effect. If anything else is shown to be due, the words do not bar it. But it amounts to an acknowledgment that nothing else is then due. We think, too, in this case, under the facts proven—especially, in view of the fact that the balance due on the note was found by taking off the accounts, as well as the frequent statements by Bowdre—make it pretty clear that it was the intention of the parties, not only to settle the note, but to declare there was nothing else to settle. Is it probable that Bowdre would allow the accounts to go to reduce the note, if Woodson had in his hands money of the firm unaccounted for; or that Bowdre would say he had settled in full with Woodson everything except the lots, if there was money in Woodson's hands unaccounted for?

The effort of the complainant was to open a settlement—two

settlements—one by deed, between the parties, of the matter now in hand, and it was not error in the Court to say that, after the death of both parties, this should not be done on anything but clear evidence. This was not only sound law, but sound sense—nothing but the statement, in another form, of the rule against stale demands, and which is the foundation of the statutes of limitation. If the receipt, with the words, in full of all demands, and the deed, are to be considered as evidence of a settlement of the firm matters, and we think they are, then there can be no good objection to the charge on either of the two points relating thereto.

We think there was error in the Court on the question of the statute of limitations. The rent is only an item of the things intended to be charged against Woodson—only an explanation of the mode in which he converted the assets, and, in that view of it, it stood with the other items. If it is to be considered as a debt actually due on account by Woodson & Redding, then the statute would apply; but if, as we think it may be considered, it is only an itemizing of the mode in which Woodson got hold of and used the assets of Woodson & Bowdre, the statute would not apply.

But in that case it would stand on the same footing as the other items, and if the jury was right in its verdict, this charge did no harm. The money paid to Bowdre's administrator by Woodson's executor was clearly paid by mistake of fact, if Woodson & Bowdre had settled in life. We think the evidence of this is overwhelming, and the two papers found by the administrator were not, in fact, evidence of any debt. Doubtless they thought so, but the jury have found, and we think rightly, that this was a mistake. If so, it ought to be repaid. The payment of it was under a mistake of fact.

Upon the whole we affirm the judgment. Unless these two men were very different people from what they seem, it is a great error to undertake to open the affairs of this firm. To do so would be to charge Mr. Bowdre with great folly and ignorance of his own rights, and Mr. Woodson with great want of good faith to his life-long friend. Nothing in the

testimony justifies such a charge against either, and a jury having so found we think justice to all parties requires us to leave that finding undisturbed.

As to the refusal of the Judge to allow the complainant to get clear of the effect of the answer by waiving discovery after the answer came in, we think the Judge was right. The Code, section 3101, authorizes a complainant to waive discovery. But this is a very different thing from waiving its *effect* after he has got it. It seems absurd to say that discovery can be waived after it has been obtained. Had that been the meaning of the Legislature, some different language would have been used. As it is, the complainant may "waive discovery;" to do that he must waive his right to the defendant's answer. What is now proposed is not to waive discovery, not to waive the necessity of an answer, but to waive the effect of the answer after it has been made. This is not what the statute authorizes, and we do not think it can be done.

Judgment affirmed.