| | |
|---|---|
| 62 | 369 |
| 97 | 578 |
| 62 | 369 |
| 119 | 662 |
| 62 | 369 |
| 120 | 198 |
| 62 | 369 |
| 143 | 458 |

# Eagle & Phœnix Manufacturing Company v. Gibson.

### *Action on the case.*

1. *Action; who may maintain.*—A party in possession of lands, whatever may be his title, or though he be without title, can maintain an action for an injury to his possession against a wrong-doer.

2. *Evidence; what admissible.*—It is permissible for a witness to testify as a fact that he is in possession of land, and he may also testify that he derived his possession from one formerly in possession claiming title to lands. Such continuous possession under claim of title, creates a presumption of ownership, which will support ejectment, until a better title is shown.

3. *Same.*—When a question is asked a witness which is not objectionable in form, but only because it may elicit illegal evidence, the injury is not in allowing the question to be asked; and if illegal evidence is contained in the reply, the objection should be made to the reply and the exception directed against the admission of the answer.

[Eagle & Phœnix Manufacturing Co. v. Gibson.]

4. *Limitations, statute of; what governs actions on case for injuries caused by erection of dam.*—The statute of limitations of one year, (Code of 1876, § 3231) governs actions on the case for damage to riparian lands, caused by the diversion of the waters of a stream by the erection of dam across such stream.

5. *Charge; what improper.*—It is not necessary that a plaintiff should show actual damage in order to maintain an action for an injury to his lands by the erection of dam, causing a stream to overflow them; and a charge which forbids a recovery, unless actual damage be shown, within the time which constitutes a bar to the action, is erroneous and properly refused.

6. *Charges; when may be refused.*—When a party requests charges which, though separately numbered, were not separately asked, and any of the charges thus asked are erroneous, the court is not required to distinguish between the good and the bad, but may refuse them all.

APPEAL from Lee Circuit Court.

Tried before Hon. JAMES E. COBB.

.This was an action on the case brought by the appellee, D. N. Gibson, against the appellant, The Eagle & Phœnix ·Manufacturing Company, to recover damages for injury done to lands of the plaintiff, by the diversion of the waters of the Chattahoochee river from its natural course, caused by the erection of a dam across said river by the defendant. On the trial, plaintiff was introduced as a witness, and on his direct examination the following question was asked him: "Who is in possession of these lots said to be damaged, and in what manner?" The witness answered that he was in possession of the lots and claimed title to the same. The defendant separately objected to both the question and answer. The court overruled the objections' and defendant excepted. The plaintiff was asked "from whom he received the possession of the lots." Defendant objected to the question. His objections were overruled and he excepted. Plaintiff then answered that he obtained possession from one Edmunds, who was in possession, and claimed these lots as owner at the time he delivered them to witness. The defendant objected to this answer; his objection was overruled and he excepted. The following question was then asked the witness: "How are you in possession—whether as owner or otherwise, and state what acts of owership, if any, you have exercised?" Defendant objected to this question; the court overruled his objection, and he excepted. In answer, witness stated "that he was in possession of them as his own, and stated various acts of ownership." This answer was also objected to by the defendant; his objections were overruled, and he excepted. The plaintiff "was then asked what was the value of the property at the time of the commencement of this suit in its then condition?" This question was also objected to by the defendant, and an exception reserved to its allowance. This witness further testified, that he bought and owned a part of the property,

alleged to have been washed out in the year 1861, and had been in possession ever since.

One J. T. Holland, a witness for plaintiff, having described the dam, and having mentioned a rock wall running north and south on the eastern bank of the river, and connected with and joining the dam, was asked by the plaintiff to describe it. This question was objected to by the defendant; the objection overruled, and the defendant excepted. Testimony was introduced tending to show that the rock wall running north and south on the eastern bank of the river, and connecting with the eastern end of the dam, diverted the water current and drove it back on the Alabama bank. The defendant objected to this evidence. The court overruled the objection, referring it to the jury to ascertain and determine from the evidence, whether the rock wall was, or not, a part of the dam, but holding that if the wall was not a part of the dam, the plaintiff could not recover in this suit for any injury done by the said wall; and to this ruling of the court the defendant excepted.

One Bates, a witness for defendant, was asked by the plaintiff, on his cross-examination, the following question: "If he did not think that persons equally as honorable and intelligent as himself, and who were living there, would not know more about the wash than he did?" The defendant objected to this question. His objection was overruled, and he excepted.

There was testimony tending to show that since a dam was erected (being about the year 1853 or 1854) by a company formerly in existence, and known as the Eagle Company, the current of the stream had always had the same course as it had since the present dam was erected; that the stream since that time had gradually and regularly washed the western bank near the points where the property alleged to be damaged, was situated. Further testimony tended to show that the washing complained of, was done by the river at high water, or at times when there were freshets. It was in evidence that the dam alleged to have caused the injuries complained of in this action, was built by the defendant not earlier than the year 1866.

There was evidence tending to show that the defendant corporation had real estate and other property in Lee county, in this State, to the value of twenty-five thousand dollars. It was also shown that the land alleged to have been damaged was in Russell county, Alabama. It was admitted that the defendant was a Georgia corporation, and had no agent or office in this State. It was proved that the plaintiff's house and a portion of his lots were washed away

by the spring freshets in the year 1874, and before the commencement of this suit.

The defendants then requested the court to charge the jury as follows: 1. That before the plaintiff can recover, the jury must believe from the evidence that the plaintiff suffered damage, during the one year prior to the commencement of this suit, and the plaintiff must show how much damage was done in that one year, or show by such evidence such a state of facts as will enable the jury to estimate the amount of damage. 2. That before the plaintiff can recover, the jury must believe from the evidence that the plaintiff suffered damage within one year prior to the commencement of this suit, and the plaintiff must show how much damage was done in that one year, and if the proof shows that damage was committed during that one year, and the years previous to that time, and does not show how much was done during that one year, but leaves the proof so in doubt that the jury cannot tell how much damage was done during said one year, and how much before that time, then the jury must find for the defendant. The defendant requested nine other charges, which were numbered consecutively from three to eleven, which, in the view the court took of the case, need not be further noticed. The bill of exceptions recites that "the court refused to give the above charges, from one to eleven inclusive, to the jury, although requested so to do by defendant's counsel in writing, whereupon the defendant excepted severally to said refusal of the court." There was a verdict and judgment for the plaintiff for the sum of sixteen hundred and twenty-five dollars, and the defendant appeals to this court, assigning as error the various rulings to which exceptions were reserved.

SAMFORD & LINDSEY, for appellants.

W. H. BARNES, and GEORGE W. HOOPER, contra.

BRICKELL, C. J.—The action is case to recover of the defendant damages for diverting from their natural channel the waters of the Chattahoochee river, causing them to overflow and injure the lands of the plaintiff. A party in possession, whatever may be his title, or though he be without title, can maintain the action against a mere wrong-doer.—*Crommelin v. Coxe*, 30 Ala. 318. Possession, the actual occupancy of lands, is a fact, (and not as counsel for the appellants argue, a conclusion of law, or of fact,) to which a witness may testify. Nor was there any reason for excluding the testimony of the plaintiff, showing that he

derived his possession from a former occupant who claimed title. Continuous possession of land, under a claim of title, creates a presumption of ownership, which will support ejectment, until a better title is shown.—*Badger v. Lyon,* 7 Ala. 564.

When a question is propounded to a witness, which is not objectionable in form, but objectionable only because it may elicit illegal evidence, the injury is not in the question, or in allowing it to be put to the witness. The witness may disclaim all knowledge of the matter to which the question refers, or if not disclaiming, the answer may disclose evidence favorable to the party against whom he is being examined, and prejudicial to the party propounding the question. If the answer introduces illegal evidence, injurious to the party objecting, he can show the injury by making the answer a part of his bill of exceptions. But if he neglects this, there is no error an appellate court can revise. The answer, if any was given, may have been beneficial to him, or none may have been made.—*Burns v. The State,* 49 Ala. 379; *Hirschfelder v. Mitchell,* 54 Ala. 415; *Nailor v. Williams,* 8 Wall. 107. This disposes of the second, third, fourth, and fifth assignments of error, directed against questions propounded to witnesses, which are not shown to have been answered.

The averments of the complaint are, that the dam across the river caused the overflow of the water. The evidence tended to show, that not only the dam, but a rock wall on the eastern bank, caused the overflow. If the wall was a part of the dam, there was no variance between the allegation and the evidence. It was a question of fact, for the jury to determine, whether it was a part of the dam; and the question seems to have been properly submitted to them.

The statute of limitations governing this action is § 3231, Code of 1876, which prescribes one year as the period within which certain actions therein named must be commenced.—*Rountree v. Brantley,* 34 Ala. 544; *Polly v. McCall,* 37 Ala. 20. Actual damage is not essential to support the action, "and two reasons are given for the doctrine—that wherever there is a wrong, there must be a remedy, and the plaintiff must at least be entitled to nominal damages; and that otherwise the adverse enjoyment might ripen into a title by lapse of time before there was any actual damage."— *Rountree. v. Brantley, supra,* and authorities cited. The first and second charges, if given, would have excluded the plaintiff from recovering nominal damages, though he may not have shown actual damage within one year before the commencement of suit, and though the wrongful act was

done, or the consequence of the act, the overflowing his lands, did not occur until within that period. A party requesting charges to the jury must frame them so that they will not mislead, and must be careful that the proposition, or principle of law, is precisely expressed. The court is not bound to modify or reform them, and indeed the statute prohibits it from so doing.—Code of 1876, § 3109. The charges requested by the appellant, though separately numbered, were not separately requested. The court was requested and refused to give them all. As two of them were manifestly erroneous, it was not the duty of the court to distinguish between them and the others—giving a part and refusing a part. It was bound to refuse them as they were requested. We repeat that which has been so often said in this court, that a party cannot devolve on the primary court the duty of distinguishing legal and proper, from illegal and objectionable instructions by mingling them. The court may decline the duty, and refuse instructions so mingled.

Let the judgment be affirmed.