# Woods *v.* The State.

*Indictment for Grand Larceny.*

1. *Competency of wife as witness against husband's accomplices.* Where several persons are jointly indicted and tried together, the wife of one of them is not a competent witness for or against the others, when her testimony affects the interest of her husband; but, when the husband is not a party to the record, not having been indicted, or a *nolle-pros.* having been entered as to him, the wife is a competent witness against the others, his accomplices in the commission of the crime.

[Woods v. The State.]

2. *Husband and wife as witnesses against each other.*—Where the testimony of husband or wife, even in a collateral matter, tends to criminate the other, it will not be compelled, though it may be received.

3. *Accomplice; corroborating testimony of.*—When an accomplice is allowed to testify as a witness in a case of felony, the testimony of his wife may be sufficient corroboration to authorize a conviction (Code, § 4895), the weight to be accorded to it being a question for the determination of the jury.

4. *General exception to refusal of two or more charges.*—A general exception to the refusal of two or more charges asked, one of which is erroneous, can not be sustained.

5. *Admissibility of declarations showing motive.*—The defendant being indicted for the larceny of cotton from a person with whom he had had a settlement as his landlord, his declarations of dissatisfaction with that settlement—"that he had got nothing out of his cotton, and that he was determined to have satisfaction"—tend to show a motive for the larceny, and are competent evidence against him.

FROM the Circuit Court of Hale.

Tried before the Hon. JOHN MOORE.

The indictment in this case charged that Patrick Woods, Tony Guy, Isaac Taylor, Isaac Jackson, George Hawks and Dick Bennett "feloniously took and carried away one bale of cotton, of the value of fifty dollars, the personal property of Mrs. Eliza Tunstall." On the trial, as the bill of exceptions and the judgment-entry each states, "before any evidence for the defense was commenced, Dick Bennett was, on motion of the State, discharged from the indictment, in order that he might be used as a witness for the State." Woods, Guy and Jackson being jointly tried, each pleaded not guilty; and the trial resulted in a verdict of guilty against the two former, who reserved a bill of exceptions to the rulings of the court, in which the facts are thus stated :

" Said Dick Bennett, being sworn as a witness for the State, testified, and gave a detailed account of the larceny of the cotton—that it was stolen on the night of December 29th, 1881, from the gin-house on the plantation belonging to the estate of James L. Tunstall, deceased, in said county of Hale; that he (witness), George Hawks, Patrick Woods, Tony Guy, Ike Taylor and Ike Jackson participated in the taking and carrying away of two bales of cotton from said gin-house on that night; that it was hauled off in the ox-wagon of said George Hawks, who was to receive, and did receive ten dollars for the use of it; and that on the next night, which was Friday, said Woods, Guy and Jackson met at his house, and they there divided among themselves the proceeds of the stolen cotton. The State then introduced Milly Bennett as a witness, who was shown to be the wife of said Dick Bennett, and who testified that, on said Friday night in Christmas week, 1881, she was at her house and in bed, but was not asleep; that her husband, Patrick Woods, Tony Guy, and Ike Jackson were there, and

VOL. LXXVI.

[Woods v. The State.]

she heard them talking, and dividing some money; and that she heard some of them say that ten dollars had been paid to George Hawks." The defendants objected to the testimony of said Milly Bennett, and moved to exclude it from the jury, "because she was the wife of said Dick Bennett, who was shown to be an accomplice in the crime, and who had testified as such, and therefore she could not corroborate the testimony of her husband; and because the facts had been already testified to by her husband." The court overruled the objections, and admitted the testimony; and said defendants excepted.

The State also proved, "having first laid the proper predicate," the confessions of said Tony Guy as to the larceny and sale of the cotton, and the division of the money; and his evidence was admitted without objection. "It was shown, also, that said two bales weighed 360 lbs. each, and were worth from $30 to $35 each;" that they were part of the crop raised on the plantation of said James L. Tunstall, during the year 1881; that said James L. died in July, 1881, and by his last will and testament, which was duly probated in said county, bequeathed his entire estate to his mother, Mrs. Eliza Tunstall; that said bales were stolen from the gin-house on the 29th December, 1881, "and that neither Mrs. Tunstall nor her manager on the place consented to any one taking them." W. C. Tunstall, a witness for the State, testified that, after the death of James L., he took control of the plantation as agent for his mother, and carried on the farming operations for the rest of the year 1881; that, as such agent, about the 15th December, 1881, he made a settlement with all the laborers on the place, including Patrick Woods, and paid each of them all that was due them; "that said Patrick Woods received no money on said settlement, and was not satisfied with it, but; on the contrary, was very much dissatisfied and angry at the result." The defendant Woods objected to the question calling for this last statement, "on the ground that it was illegal, irrelevant, and calculated to mislead and prejudice the minds of the jury;" and he duly excepted to the overruling of his objection, though it does not appear that any objection or exception was taken to the answer of the witness. Banks Washington, another witness for the State, testified that, "shortly after said settlement, in December, 1881, he heard said Pat. Woods express his dissatisfaction —saying, 'that he had got nothing out of his cotton, and that he was determined to have satisfaction.'" To the question calling for this testimony, and to the testimony itself, said Patrick Woods duly objected, and excepted to the overruling of his objections. "There was other evidence offered by the State, tending to connect the defendants with the commission

[Woods v. The State.]

of the offense charged; and some testimony on the part of said Ike Jackson, tending to show his innocence."

"This was all the evidence." Thereupon, the defendants requested the following charges in writing: (1.) "If a witness who has become State's evidence testifies corruptly, or makes only partial disclosures, he may then be proceeded against for his own crimes, having failed to perform the condition on which he was admitted." (2.) "The jury can not convict the defendants, unless the testimony of Dick Bennett is corroborated by other evidence connecting the defendants with the commission of the crime." (3.) "The testimony of the wife of an accomplice, to the alleged facts connecting the defendants with the commission of the crime, is not corroborative of the testimony of an accomplice, within the meaning of section 4895 of the Code." The court "refused to give either of said charges, by writing Refused across the face thereof, and signing the judge's name thereto; to which ruling of the court said defendants then and there excepted."

THOS. SEAY, for the appellants, cited Rex v. Neal, 7 Car. & P. 168; Rex v. Noakes, 5 Car. & P. 326; State v. Wilson, 31 N. J. 77; 1 Greenl. Ev. § 335; State v. Powell, 58 Ala. 362.

T. N. McCLELLAN, Attorney-General, for the State, cited 1 Wharton's Cr. Law, 769; 8 Car. & P. 284; 1 Leach, 115; 1 Metc. Ky. 13; 1 Bishop's Cr. Pr. 1170; 1 Texas App. 278; 25 Iowa, 128; 3 Ib. 481; Kelsoe v. The State, 47 Ala. 598; McAdory v. The State, 62 Ala. 154; Overstreet v. The State, 46 Ala. 30; Morningstar v. The State, 55 Ala. 148; Hudson v. The State, 61 Ala. 333; Johnson v. The State, 17 Ala. 618.

SOMERVILLE, J.—It may now be considered as a settled rule of criminal evidence, that, where several persons are tried together under a joint indictment, the wife of neither of the defendants is a competent witness for or against a co-defendant of her husband, where her testimony affects the interest of her husband.—Whart. Cr. Ev. §§ 391–392; 1 Greenl. Ev. § 335; Roscoe's Cr. Ev. 124*; Com. v. Robinson, 1 Gray, 555.

Where, however, the husband is not a party to the record, whether by reason of a failure to indict him, or of the entering of a nolle-prosequi against him, no reason is perceived why the testimony of the wife should be held incompetent in the prosecution of an accomplice of her husband.—1 Bishop Cr. Proc. (3d Ed. 1880), §§ 1019–1020. The proceeding then becomes a collateral one, in which the interests of the husband can not be judicially affected. And, in such cases, where neither the husband nor the wife is a party defendant to the cause, so as to

[Woods v. The State.]

be directly interested, the testimony of either may be received, although its tendency is to criminate the other. The main reason is, that judgment of acquittal or conviction can not be used in evidence against or in favor of the husband, or wife, as the case may be, in the event of their subsequent indictment and trial. It would be *res inter alios acta* as to them.—*State v. Bridgman* (49 Vt. 202), 24 Am. Rep. 124; *Moffit v. State*, 2 Humph. (Tenn.) 99; 1 Greenl. Ev. § 342; 1 Archbold's Cr. Pr. & Pl. (Pomeroy) 472, [153*], note 1; 3 Russell's Cr. (9th Ed.), 630*; *State v. Briggs*, (9 R. I. 361), 11 Amer. Rep. 270. As said in *State v. Briggs*, *supra*, its effect, at most, would be only as information, and not as evidence against the husband, because it could not be used as evidence against him in a subsequent direct proceeding. Nor does the wife's admission as a witness violate the principles of public policy founded in the relation of husband and wife, " because she is not offered as a witness for or against him."—*Moffit v. State* (2 Humph. 99), 36 Amer. Dec. 301, 303. The broad rule, indeed, is asserted by Mr. Greenleaf, that where the grounds of defense are several and distinct, and in no-way dependent on each other, no reason is perceived why the wife even of one defendant should not be admitted as a witness for a co-defendant. 1 Greenl. Ev. § 335. And this doctrine is supported by Mr. Wharton, with the qualification, of course, that it shall not apply in cases where the acquittal of one defendant shall operate necessarily as the acquittal of the other.—Whart. Cr. Ev. §§ 392, 445; *United States v. Addate*, 6 Blatchf. 76. Among the latter class of cases, may be enumerated the offenses of riot, conspiracy, adultery, and the like.—*Moffit v. State, supra*.

The principle seems to be sound, and supported by authority, that in all such cases, where any co-defendant is admissible, his wife is also admissible, the husband not being a party, nor otherwise directly interested.—Whart. Cr. Ev. (8th Ed.), §§ 391, 445; *Bell v. Coiel*, 27 Amer. Dec. 448.

We admit that there is a conflict of' authority in reference to this question, and there are well considered decisions adverse to some of the views which we here express. But the better opinion, with the growing tendency of later judicial decisions, is believed to be in harmony with the conclusions reached by us. We may add, that, where the testimony of husband or wife, even in a collateral matter, tends to criminate the other, while it will be admitted, it seems that it will not be *compelled*. The more reasonable view is to admit such testimony, in all cases " where it can not be used as an instrument of future prosecution, provided the witness be not compelled to testify."

1 Whart. Cr. Ev. §§ 432, 425; *State v. Dudley*, 7 Wis. 664; *State v. Briggs*, 11 Amer. Rep. 270, *supra*.

The court did not err in admitting the testimony of the witness, Milly Bennett. Her husband, although indicted originally as a party defendant in the case, was no longer a party to the record; the *nolle-prosequi* which had been entered, for the purpose of making a State witness of him, operating to discharge him from the prosecution, and as an acquittal, if he should testify truly and fairly upon the trial.—*Marler v. State*, 68 Ala. 580; Code (1876), § 4893. The husband, although an accomplice, was a competent witness, and the wife was equally so, she interposing no objection.

The third charge requested by the defendants, and refused by the court, raises the question as to whether the testimony of the wife of an accomplice may be legally regarded as a corroboration of the testimony of the accomplice himself, within the meaning of section 4895 of the Code, which prohibits a conviction of felony on the uncorroborated testimony of an accomplice. It has been held in an English case, comparatively modern, that confirmation by the wife is "no confirmation at all," the wife and the accomplice being only taken as one.—*Rex v. Neal*, 7 C. & P. 168; 3 Russell Cr. (9th Ed.) 608. Mr. Phillips observes of this case, that its circumstances "might have been such as to warrant this decision." "But," he adds, "it may often happen, that the evidence of the wife is so free from suspicion, so independent of the evidence of the husband, so manifestly unconcerted and uncontrived, and so undesignedly corroborative of his evidence, that it might be proper not to consider the accomplice and his wife as one, but to act upon her evidence as sufficient corroboration." –1 Phil. Ev. 33. The only ground upon which the rule declared in *Rex v. Neal* can be reasonably sustained, would seem to be, that the interests of the husband and wife are so nearly identical, and the domination of the former over the latter so powerful and irresistible, that she must necessarily be warped in her testimony by the potency of these considerations, regardless of the sanctity of her oath. There is much force in this view, but it is based rather upon theoretical than practical reasons, and finds little or no support among the adjudged cases in this country. It is a corollary from the proposition of the ancient common law, holding to the abrogation of the wife's legal entity by a complete merger of it into that of her husband,—a theory which has been modified by recent legislation, and the changed *status* of the wife, as wrought by the refining usage of a more cultured civilization. The wife, under our laws, may be the owner of her separate estate, in a more real sense than ever before. She may dispose of it by will, so as to cut off the

claims of her husband, thus rendering her, to a great extent, financially independent of him. She may be declared a "free-dealer" by a court of chancery, so as to invest her with important powers over her own property, whenever her interests require it. She may procure the removal of her husband from the trusteeship of her property, when his conduct shows him to be unfit for its management. So, she may be divorced from her husband upon the grounds of his cruelty to, or abandonment of her. Nor is the husband's power of corporal punishment over her now recognized, as it seems to have been in the early history of the common law. The American authorities generally support the view, that the testimony of the wife may be a satisfactory and sufficient corroboration of her husband, who testifies as an accomplice, within the discretion of the jury, so as to warrant a conviction, in cases where such corroboration is requisite. The fact of the relationship, and the danger of marital domination on the part of the husband, go, it is true, largely to assail the credibility of the wife, but not to her competency; and the degree of weight which should be accorded to her testimony must be left to the jury. It may sometimes constitute a very weak corroboration, yet it can not justly be said to be absolutely no corroboration at all. The case bears no similitude to that of an accomplice, whose testimony, it has been held, can not confirm that of another accomplice in the same crime.—1 Greenl. Ev. § 380 ; 3 Russell Cr. 609 ; *Rex v. Noakes*, 5 Car. & P. 326. The reason is, that each is contaminated by the turpitude of the same guilt, and the same infirmity therefore attaches alike to the testimony of both. This view is taken generally by the American courts, where the question has been considered and decided.—*Dill v. The State*, 1 Tex. Ct. App. 278 ; *State v. Mone*, 28 Iowa, 128 ; *Haskins v. The People*, 16 N. Y. 344 ; 1 Bish. Cr. Proc. (3d Ed. 1880) § 1170.

We need not consider the other two charges which were requested by the defendant, and refused by the court. The exception taken is a general exception to the refusal of the court to give the three charges requested. One of these charges being erroneous, and properly refused, the general exception can not be sustained.—*Stovall v. Fowler*, 72 Ala. 77 ; *Elliott v. Stocks*, 67 Ala. 336.

The testimony of the witness Washington, as to the declarations made by the defendant Woods, was, in our opinion, admissible to show a motive for the commission of the offense charged. He declared his dissatisfaction with the settlement made between himself and Tunstall, involving the identical cotton which is the subject of the larceny ; saying that "he had got *nothing* out of his cotton, and that he was determined

[Winslow v. The State.]

*to have satisfaction.*" This language is susceptible of such construction as to announce a covert threat of reparation by means dishonest as well as honest. Its meaning was for the determination of the jury. The testimony of the witness Tunstall, touching the same subject, though weaker than that of the witness Washington, had a like tendency to prove motive, and was also corroborative of Washington's statement, and for this reason was admissible.—*Morningstar v. The State*, 55 Ala. 148; *Hudson v. The State*, 61 Ala. 333.

We find no error in the rulings of the court, and the judgment must be affirmed.

