# Phœnix Insurance Co. *v.* Moog.

*Action on Policy of Marine Insurance.*

1. *Abatement and revivor, action by partnership.*—On the death of a sole plaintiff or defendant, if the action is not revived within eighteen months, in favor of or against his personal representative, the suit is abated (Code, § 2908); but this statutory provision does not apply to an action brought by a partnership, which may be prosecuted in the name of the surviving partner alone, the death of the other being suggested on the record, without any revivor in favor of his administrator.

2. *Exception to several charges given.*—An exception following several charges given, and expressed in these words: "The defendant excepted, and now excepts, to each one of these charges as given by the court," is a sufficient reservation of a separate exception to each.

3. *Charge as to proof of fraud.*—A charge which instructs the jury, in a civil case, "that, to justify the imputation of fraud, the facts must not be explicable on any other reasonable hypothesis," exacts too great a measure of proof, and is erroneous.

4. *Charge narrowing defenses; error without injury.*—In an action on a policy of marine insurance, the defenses set up by the pleas being three, namely, that the vessel was unseaworthy, that she was burned by the procurement of the plaintiffs, or that they were accessory to the burning, and that they had fraudulently shipped a fictitious cargo, on which they had procured an over insurance—a charge which instructs the jury that the defenses may be reduced to the two first stated is erroneous; but the error works no injury, when the court, in another part of the charge, commenting on the evidence which tended to show that a fictitious cargo was shipped, further instructs them, "if such has been established, the conclusion can not but be that they are guilty of a participation in the burning of the vessel, and certainly, if your minds are satisfied that they could have been guilty of such frauds, they can not recover.

5. *Instructions to jury disagreeing, and asking to be discharged.*—When the jury report to the court that they are unable to agree on a verdict, and therefore ask to be discharged, the court may advise them to cultivate a spirit of harmony, and arrive at a verdict, if possible, in order that there may be an end of protracted litigation; but the court should not go beyond this, nor threaten or intimate to them an intention to keep them together until the end of the term, unless they sooner agree on a verdict.

6. *Same; exception; when too late.*—It is too late to except to such instructions after the jury have again retired.

APPEAL from the Circuit Court of Mobile,

Tried before the Hon. W. E. CLARKE,

[Phœnix Insurance Company v. Moog.]

This case is brought to this court the second time by the appellant, the Phœnix Insurance Company.—See *Phœnix Insurance Co. v. Moog*, 78 Ala. 284. The action, as originally brought, was by A. & B. Moog, *as partners*, against appellant, on a policy of insurance for $12,500, procured on a cargo of merchandise by said A. & B. Moog from appellant. When the case was called for the trial from which this appeal was taken, the appellant moved, *first*, that the suit stand *abated*, and *second*, that it be *dismissed*, because A. Moog, one of the plaintiffs, had died more than eighteen months before, and the suit had not been revived, and the death of said A. Moog had not been suggested upon the record. In support of these motions, the facts alleged as the grounds thereof were proven ; but the court overruled the motions, and the appellant excepted separately to the overruling of each motion.

The appellee asked the following charges, which were given by the court :

1. "Where the allegation, whether negative or affirmative in form, involves a charge of fraud, or other like violation of the law of God and man, the party making the allegation must prove it; for in every such case the presumption of law, which is always in favor of innocence, is in favor of the party charged."

2. "To establish a charge of fraud, the facts must be such that they are not explicable on any other reasonable hypothesis."

3. "Neither courts nor juries ought to strive to force conclusions of fraud, and if the facts and circumstances in evidence are fairly susceptible of the theory of an honest intent on the part of the plaintiffs, that construction should be placed upon them."

4. "When the allegation, whether negative or affirmative in form, involves a charge of fraud, or like violation of the law, the party making the allegation must prove it, for in every such case the presumption of law, which is always in favor of innocence, is in favor of the party charged."

To these charges an exception was reserved by appellant, in the following language : "The defendant excepted, and now excepts to each one of these charges as given by the court, at the plaintiff's request."

The appellant, also, excepted to a portion of the general charge of the court, as appears in the body of the opinion.

After the jury had been considering their verdict for five days, they notified the judge that they desired to come in and consult the court. Before granting this request, the court stated to the counsel on both sides, that nothing must

be said by them that would be likely to influence the jury; that, if they should do so, it would be treated as a contempt of court; that if they desired to say anything, they must do it before the jury came out, but, if they wished to except to anything the court might say to the jury, they of course could do so. Thereupon the jury was brought in, and the court addressed to them the remarks, which are recited in full in the opinion in this case. When the jury had retired, after being so addressed by the court, the appellant excepted "to so much of said statement to the jury, as instructed them that it was the duty of jurors to cultivate a spirit of harmony and arrive at a verdict if they could; also, to so much of said statement as told the jury what had occurred on previous trials of the cause; also, to the statement, that it was the impression of the court, that it would keep them together until the end of the term, unless before that time they agreed upon a verdict."

The court made these remarks to the jury twelve days before the expiration of the term, and on the next day after they had been so addressed, the jury found a verdict for the plaintiff.

T. A. HAMILTON, of counsel for appellant, submitted an elaborate printed argument, citing the following authorities: 1. As to the motions to *abate* and *dismiss* the suit—Code of 1876, § 2908; *Rupert v. Elston's Ex'rs*, 35 Ala. 79, 85; 49 *ib.* 403; *Pope's Adm'r v. Irby, Adm'r*, 57 *ib.* 105, 107–8; *Brown v. Tutwiler*, 61 *ib.* 374; *Evans v. Welch*, 63 *ib.* 253–4. 2. As to the remarks of the court and its course towards the jury, when they reported they could not agree, the exception was taken in time.—1 Arch. Prac. 210; Buller's Nisi Prius, 315; 1 Bouv. Law Dic. 200–1; Aikin's Dig. 254, § 2; Clay's Dig. 307, § 5; Code of 1852, § 2353; Rev. Code, § 2754; Code of 1876, § 3107; *Powers v. Wright*, Minor, 66; *Strader et al. v. Alexander*, 9 Port. 443; 5 Ala. 238; 29 *ib.* 301; *Wright v. Sharp*, 1 Salk. R. 288; 9 Wheat. 657; 6 How. (U. S.) 275; 4 Peters, 102; 6 Johns. 279; 33 Ala. 116; 63 *ib.* 463; 68 *ib.* 502, 507; 10 Johns. 313, 322; 1 Stew. 270; 5 S. & P. 335; 38 Ala. 516; 62 *ib.* 378; 3 Pick. R. 173, 175; 3 Ind. R. 111; 5 *ib.* 542; 7 *ib.* 156; 4 Dall. R. 249; 8 Serg. & R. 211, 216; 3 Pa. State R. 48; 1 Binn. 38; 7 Watts & S. 172. The *remarks* of the court were wrong.—Thompson & Merriam on Juries, § 355; 1 Pick. R. 337; 38 Ala. 584; Brick. Dig. 340–5; *Green v Telfair*, 11 How. Pr. R. 260; 2 Head R. 566–8; 81 Ind. 20, 24; 68 Ga. 182, 186; 31 *ib.* 625, 626, 639, 640. 3. As to the charges—Reavis' Dig. 319, § 60; 1 Brick. 336, ¶ 10; 16 Ala. 61; 69 *ib.* 242, 250; 78 *ib.*

22

365, 367 ; 73 *ib.* 455 ; 23 *ib.* 17 ; 51 *ib.* 394 ; 59 *ib.* 92 ; 55 *ib.* 178 ; 45 *ib.* 89 ; 76 *ib.* 403 ; 36 *ib* 449 ; 28 *ib.* 606 ; 30 *ib.* 253; *Brown v. Newman,* 66 *ib.* 275 (3d head note) ; 68 *ib.* 204, 593 ; 67 Ill. 270 ; 78 *ib.* 489 ; 71 *ib.* 116 ; 64 *ib.* 535 ; 27 *ib.* 267. The exception to the charges—67 Ala. 337 ; 50 *ib.* 108 ; 59 *ib.* 272, 625–9 ; 53 *ib.* 83 ; 72 *ib.* 171; 63 *ib.* 355 ; 56 *ib.* 510 ; 69 *ib.* 524 ; 55 *ib.* 411 ; 60 *ib.* 582–605.

STONE, C. J.—The motion made in the court below to have the present suit declared abated, because it was not revived within 18 months after the death of A. Moog, was based on § 2908 of the Code of 1876. That section makes provision for two classes of cases. Its first and main object is to provide for cases where a sole plaintiff or sole defendant dies, or all the plaintiffs or all the defendants die, leaving the suit without a party of record, either plaintiff or defendant. This, if not cured, causes an abatement; for a suit can not exist without antagonizing parties. In such case, if the cause of action survive, the statute allows eighteen months, and only eighteen months, within which to revive in the name of, or against the successor or representative of the deceased party. Failing, the suit abates.—*Rupert v. Elston,* 35 Ala. 79 ; *Dumas v. Robbins,* 48 Ala. 545 ; *Pope v. Irby,* 57 Ala. 105 ; *Brown v. Tutwiler,* 61 Ala. 372 ; *Evans v. Welch,* 63 Ala. 250 ; *Glenn v. Billingslea,* 64 Ala. 345 ; *Ex parte Sayre,* 69 Ala. 184.

When, however, there are more than one plaintiff or defendant, and the suit is of a class which can be prosecuted or defended in the name of the survivor, the death of one plaintiff or defendant does not abate the suit. "The death of such party may be suggested upon the record, and the action proceed in the name of, or against the survivor." This is in no sense a revivor ; for the surviving party is neither personal representative nor successor to the deceased.—2 Tidd's Practice, 1116 *et seq.*; 1 Bouv. Bac. Abr. 11 *et seq. Evans v. Welch,* 63 Ala. 250, was a statutory real action, brought by five plaintiffs, George Riser being one of the number. They claimed under a common title. Riser died, and more than eighteen months afterwards the Circuit Court permitted a revivor in the name of his heirs. On appeal this court reversed so much of the judgment as permitted the revivor, but did not abate the suit. The cause was remanded that the suit might continue in the name of the four surviving plaintiffs. The effect of the remandment was, that the suit, as to the survivors, had not abated by the failure to revive as to Riser. This, on the principle, that in ejectment and in the corresponding statutory action,

plaintiffs having a title less than the entirety, can recover to the extent of their title.

The present action was brought by A. & B. Moog as partners.· When A. Moog died, both the title and right to sue vested in B. Moog, the surviving partner. It was not a case for revivor, and the death did not abate the suit. Suggestion of the death of A. Moog met all the wants of the case, and the eighteen months limitation has no bearing on the question. The Circuit Court did not err in refusing to declare the suit abated.

Four charges, numbered 1, 2, 3, 4, were given to the jury at the request of the plaintiff, and to them was reserved an exception in the following language: "The defendant excepted, and now excepts to each one of these charges as given by the court at plaintiffs' request." This language is found immediately after said four charges as copied in the bill of exceptions. Some of these charges are free from error; notably charge 3, which expresses precisely our view on the subject.

We have a rule that when an exception is general to two or more charges, and one or more of them is free from error, the court commits no reversible error by giving or refusing the whole batch. The exception must not be too broad, but must be specific, and limited to the error complained of. The court is not bound to dissect, or analyze the exception, so as to separate the error from the truth.—*Mayberry v. Leech*, 58 Ala. 339; *Eagle & Phœnix Manf'g Co. v. Gibson*, 62 Ala. 369; *Stovall v. Fowler*, 72 Ala. 77; *Elliott v. Stocks*, 67 Ala. 336; *Robertson v. Black*, 74 Ala. 322; *Woods v. State*, 76 Ala. 35; *Bedwell v. Bedwell*, 77 Ala. 587; *Cohen v. State*, 50 Ala. 108; *S. & N. Ala. R. R. Co. v. Jones*, 56 Ala. 507; *Bernstein v. Humes*, 60 Ala. 582; *Mayor v. Ramsey*, 63 Ala. 352; *Smith v. Sweeney*, 69 Ala. 524; *Farley v. State*, 72 Ala. 170.

It is contended for appellee that the exception in this case is too general, and must be disregarded, because it falls within the rule we have been considering. In *Eagle & Phœnix Manf'g Co. v. Gibson, supra*, the exception was in the following language: "The court refused to give the above charges, from one to eleven inclusive, to the jury, although requested so to do by defendant's counsel in writing, whereupon defendant excepted severally to said refusal of the court." This exception is awkwardly expressed, and it is difficult to determine what it does mean. The refusal is spoken of as one and single—a single refusal. A several exception to a single refusal is of difficult comprehension. This court construed it as an exception in gross, and ruled

on it as such. So, in *Woods v. State*, 76 Ala. 35, three charges were asked and refused, and the exception is thus expressed : "The court refused to give either of said charges, by writing refused across the face thereof, and signing the judge's name thereto ; to which ruling of the court the defendant then and there excepted." This was manifestly a single exception, to rulings on three separate charges. *Holland v. Barnes*, 53 Ala. 83 is very like *Woods v. State, supra.* We think the rulings sufficiently reserved in this case.—*Lehman v. Bibb*, 55 Ala. 411 ; *Bernstein v. Humes*, 60 Ala. 582 ; *S. & N. Ala. R. R. Co. v. Sullivan*, 59 Ala. 272. In giving the second of the charges asked by plaintiff the Circuit Court erred.—*Adams v. Thornton*, 78 Ala. 489.

In charging the jury, the court said : "The defenses set up may be reduced to two :

    1.   Unseaworthiness of the vessel.

    2.   That she was burned by the procurement of the plaintiffs, or that they were accessory to such burning." ·

There was an exception to this clause of the charge.

When this case was before us at a former term—78 Ala. 284—it was said in the opinion that "One of the defenses to this action is a fraudulent conspiracy on the part of plaintiffs to cheat the defendant by shipping a fictitious cargo, comparatively worthless in value, upon which, by false representations, they had procured an over-insurance largely exaggerated." In another place it was said : "We decline to consider the twelfth original plea, because the full benefit of it was obtained under the fifth amended plea," etc. Of the new or amended pleas filed in June and July, 1882, issue was joined, among others, on the following named pleas: No. five, of the pleas filed to the two new counts, styled third and fourth counts. And on the fifth, sixth, seventh, eleventh and twelfth of the pleas filed to the whole complaint, consisting of four counts after the amendment. The defense set up in these pleas is, a false and fraudulent loading of the vessel, so as to make it appear it contained a large and valuable cargo of merchandise, when in fact it was of but little value. Some of these pleas contain the averment, in detail, that the cargo consisted largely of valueless sham goods and empty packages, with the fraudulent intention on the part of said plaintiffs that they would place a very much smaller amount in value of goods than sixty-six thousand dollars on board of said brig for said voyage ; and further fraudulently intending and contriving, in the event of the loss upon said voyage of such goods as had been actually laden by said plaintiffs on board of said brig for said voyage, that they would recover from said

insurance companies (including this defendant among the number), the whole amount of the said insurance policies. Another averment of one of the pleas is, "that the said plaintiffs knowingly and wilfully, and with intent to defraud the defendant in this behalf, caused to be laden on board said brig for said voyage, and as part of her said cargo, a large quantity of packages with the appearance of packages of genuine merchandise and goods, and apparently of great value, to-wit, of the value of sixteen thousand dollars, but which in reality were of no value; and this was at the time well known to said plaintiffs." Neither of these six pleas contains any averment that the brig was unseaworthy, and only two of the six aver that plaintiffs had any part or participation in burning the vessel, or in procuring it to be burned. As we have said, issue was joined on the pleas we have mentioned. The defense, then, was not reduced to two issues—unseaworthiness, and the burning of the brig by plaintiffs' procurement, or with their connivance.

It is contended for appellee that if the Circuit Court erred in narrowing the defense to the two named grounds, it was error without injury; for in the further progress of the charge, the court set itself right on this question. The part of the charge relied on as accomplishing this result is as follows : "In this particular case the defendant does not claim to have direct testimony that plaintiff instructed the mate or captain to fire the vessel, or consented to their doing so, or had knowledge of their intention to do so. It does claim, however, that it has proven a fraudulent cargo put on the vessel by plaintiffs—water instead of liquors, empty packages, loaded by them, as containing real goods—and generally a cargo by them largely made up of sham goods. If such has been established, the conclusion can not but be that plaintiff is guilty of a participation in the burning of the vessel. Certainly, if your minds are satisfied that they could have been guilty of such frauds, they can not recover."

The last clause of the language quoted does cover the third ground of defense we have been considering, and probably prevented any possible injury that could ensue from the mistaken narrowing of the defense to two grounds. And while it probably can not be asserted as matter of law that "the conclusion can not but be that plaintiff is guilty of a participation in the burning of the vessel," on the hypothesis expressed in the charge, yet, if believed, it was a circumstance to be weighed by the jury in determining whether or not plaintiff did participate in, consent to, or aid in procuring the burning of the vessel. We have indulged

in these reflections and criticisms, that the question may not arise in its present shape on another trial.

After the jury had been charged, and after they had considered of their verdict for five days, they returned into court, and requested to be discharged, saying they had been utterly unable to agree, and, as expressed in the opinion of one of their body, "he was satisfied the jury could not agree, even if they should be kept together till the end of the term; and, if the jury were polled, he thought they would state the same thing."

"The court, thereupon, told the jury that this was the third trial of this cause; that on the first trial a verdict had been found, and the next time there had been a mistrial; that it now stood upon its third trial, and that upon each occasion the trial had occupied the court for near a fortnight; that it was very important there should be an end to this litigation, if practicable, and it was the duty of the jurors to cultivate a spirit of harmony, and to arrive at a verdict if they could; that he could not discharge them at this time, and that they must retire again and consider of their verdict; that this court would expire by limitation of law on the third day of July, 1886, and it was the present impression of the court that he would keep them together until the end of the term, unless before that time they agreed upon a verdict. The court added, that what he stated to the jury was not stated for the purpose of influencing their verdict, but in justification of his reasons for refusing the request of the jury." This took place June 21, 1886—twelve days before the expiration of the term of the court.

The language of the court, copied above, was not excepted to in such form that it can be assigned as error. But inasmuch as this case must be reversed, and a similar exigency may arise on another trial, or in some other case, we will express our views upon it.

Much that was said by the presiding judge we heartily approve. It is certainly desirable that there shall be an end of litigation with no undue delay. And jurors should deliberate patiently and long, if necessary, on issues submitted to them, and without prejudice, or previously formed bias. They should cultivate a spirit of harmony and tolerance, and arrive at a verdict, if they can conscientiously do so. They should scan and weigh the testimony of witnesses solely with a view of ascertaining the truth, shutting their eyes to the personal results of their finding, and should apply to the facts, thus ascertained, the rules of law, as declared to them by the presiding judge. They have no

[Phœnix Insurance Co. v. Moog.]

greater right to disregard the instructions of the judge, as to rules of law, than he has to say to them what witnesses they shall believe and what disbelieve. When their finding is the resultant of their honest convictions of fact, as applied to the law given them in charge, then indeed is their finding what its name imports—a verdict, a true saying.

We approve the following language as correct in principle: "After the jury had retired to deliberate, and had been out five hours, they returned into court, and announced their inability to agree on a verdict. The court, thereupon, further instructed the jury as to their duty in endeavoring to reconcile their views and arrive at a verdict, if consistent with their consciences, rather than the parties should be put to the trouble and expense of trying the case again ; and this is complained of upon the ground that the court should not charge the jury the second time, after they return into court and say they can not agree, unless they ask for further instructions on some point; and the court should not urge the jury to agree, nor make any remarks to the prejudice of either side. This last of course the court should not do, and nothing in this case was said to the prejudice of either party, unless calling the attention of the jury to the propriety of their reconciling all differences of opinion so far as they conscientiously could, and agreeing upon a verdict, can be so considered, which we think can not."—*Pierce v. Rehfus*, 35 Mich. 54; *Allen v. Woodson*, 50 Ga. 53 ; Sackett on Instructions to Juries, 12 ; Thompson, Charging Jury, 82.

On the other hand, there is a limit beyond which the court should not go. In *Green v. Telfair*, 11 How. Pract. 260, the court, after laying down the principle pretty much as it is stated in *Pierce v. Rehfus, supra*, added : "A judge may also keep the jury together as long as, in his judgment, there is any reasonable prospect of their being able to agree ; but beyond this I do not think he is at liberty to go. An attempt to influence the jury by referring to the time they are to be kept together, or the inconvenience to which they are to be subjected, in case they shall be so pertinacious as to adhere to their individual opinions, and thus continue to disagree, can not be justified. A judge has no right to threaten or intimidate a jury, in order to affect their deliberations. I think he has no right even to allude to his own purposes as to the length of time they are to be kept together. There should be nothing in his intercourse with the jury having the least appearance of duress or coercion." There was a reversal on this ground. To the same effect are *T. H. & I. R. R. Co. v. Jackson*, 81 Ind. 19 ; *Obear*

v. *Gray*, 68 Ga. 182. See, also, *Gholson v. Gholson*, 31 Ga. 625; *Furhman v. Mayor*, 64 Ala. 283.

It would be difficult to define a rule, both in its extent and limits, with more exact precision, than is expressed in the two extracts above.

The judgment of the Circuit Court must be reversed and the cause remanded.