## Davis v. Davis.

*Action on Common Counts, for Goods Sold and Delivered.*

1. *Death of partner, pending action by partnership.*—In an action brought by three persons styling themselves late partners, the death of one of them pending the suit does not operate an abatement of the suit, nor require a revivor within eighteen months; but his death having been suggested on the record, the cause may be continued and prosecuted in the names of the survivors.

2. *Assignment by plaintiffs for benefit of creditors, pending suit.*—In an action brought by late partners, or surviving partners, an assignment for the benefit of their creditors, executed by them pending the suit, is not good matter for a plea *puis darrein continuance*, nor otherwise available as a defense; though the court might interfere, in a proper case, to preserve the fund and prevent its waste or misapplication.

3. *Competency of agent as witness, in action against estate of deceased principal.*—In an action against an administrator, seeking to charge the intestate's estate for goods sold and delivered on the orders of an agent, whose authority is denied, the agent is not incompetent as a witness under the statute (Code, § 2765), but may testify to the fact of his agency and the extent of his authority.

4. *Revocation of agency by death; sending order by mail.*—Where an agent sends by mail, on the day before the death of his principal, an order to a non-resident merchant, with whom he has a general ar-

[Davis v. Davis.]

rangement for goods to be supplied on orders during the year, and the merchant receives and fills it within a reasonable time, in ignorance of the intervening death of the principal, the contract is binding as of the day on which the order was deposited in the mail.

5. *Contract of agent with interest adverse to principal.*—An agent can not bind his principal by a contract in which he has an adverse personal interest, nor stipulate with the other contracting party for a profit or benefit to himself; yet, if he·has authority to buy goods from a non-resident merchant, to be advanced and sold by retail to his principal's tenants, charging them an advance on the wholesale price, the seller's knowledge that this profit was for the benefit of the agent, and the principal's ignorance of that fact, would not invalidate the contract as between the seller and the principal, but the latter might recover the profit realized, by action against the agent.

APPEAL from the Circuit Court of Limestone.

Tried before the Hon. H. C. SPEAKE.

This action was brought by "James Trabue, Wm. A. Davis and Richard Trabue, late partners doing business under the firm name and style of Trabue, Davis & Co.," as the plaintiffs are described in the complaint, though in the heading of the complaint, as well as in the summons, they are called "Trabue, Davis & Co.;" against the administrator of the estate of Mrs. Eliza A. F. Lane, deceased. The action was commenced on the 26th October, 1883, and was founded on an account for goods sold and delivered by plaintiffs to defendant's intestate, on orders sent by E. J. Russell as her agent, aggregating $528.51. The complaint contained only the common counts for goods sold and delivered, claiming the aggregate amount of $528.51. On the first trial of the case, as shown by the former report (82 Ala. 227), the account sued on and offered in evidence contained items for goods ordered and sold, principally bulk meat, corn, &c., on five different days, namely: March 25th, April 19th, May 20th, July 3d, and July 6th, 1882; but on the second trial, as shown by the present record, the last two items were disregarded.

James Trabue having died after the decision on the former appeal, his death seems to have been suggested at the February term, 1886, and an order of revivor entered continuing the cause in favor of the survivors; but this only appears from an order made in December, 1889, overruling and dismissing defendant's motion to set aside that order because more than eighteen months after the death of said Trabue had elapsed before said order was made. The general issue was pleaded, and also.four special pleas. The record does not show what the second plea was, nor any action on it. The third and fourth pleas each set up an alleged assignment by the plaintiffs, pending the suit, for the benefit of their creditors; and these were stricken out by the court as frivolous. A fifth plea

[Davis v. Davis.]

seems to have been filed, alleging that plaintiffs and the agent of defendant's intestate, "who created the account sued on, in making said account combined and *consolidated* together to enable said agent to make a profit for himself out of the goods bought, without the knowledge or consent of defendant's intestate, and hence the purchase of said goods was and is void as to said intestate." The judgment-entry only recites that the cause was tried on issue joined, and resulted in a verdict and judgment for plaintiffs, for $607.80.

The plaintiffs introduced E. J. Russell as a witness, by whom, as the agent of Mrs. Lane, the orders were sent on which the account was founded; and the court allowed him to testify, against the objection and exception of the defendant. Said Russell testified, that Mrs. Lane employed him as her agent, in 1881, "to look after her several plantations in Limestone county, to rent out the lands, look after the tenants, collect the rents, see that the plantations were properly cared for, and attend to her business generally;" that he was at that time engaged in business as a merchant in Athens, and made advances to Mrs. Lane's tenants, at her instance and request, until February, 1882, when he failed in business; that he then informed her he could make no further advances to them, but could make arrangements with plaintiffs, who were wholesale merchants in Louisville, Kentucky, to furnish her tenants with necessary supplies, and she authorized him to do so, "to retail the goods to the hands for her, and to charge them ten per cent. for his trouble;" and that the goods were purchased by him under this authority, and retailed to the tenants at ten per cent. profit.

The several orders written and sent by said Russell were identified by him, and were admitted as evidence against the objections and exceptions of the defendant. The first order, which was dated March 21st, contained these expressions: "When Col. Wright was her · I spoke to him in regard to furnishing me, as agent for Mrs. Lane, $300 or $400 in supplies for renters on her places, and proposed to give you shipments of cotton from these places for the accommodation. . . I will want this arrangement separate from others you may make with parties here, so that I can get the benefit of profits in retailing to the hands. If you can accommodate me in this way, please send 50 bu. corn, and 300 lbs. meat, at once." The second order was dated April 15th, and was filled April 9th; and the third, which was dated May 15th, was filled May 10th. The first order was signed "E. J. Russell," and in each of the others the word *agent* was added to his signature. Russell testified, for the plaintiffs, that this last order, addressed

to them at Louisville, was placed by him in the post-office at Athens about four o'clock in the afternoon of the 15th, and that Mrs. Lane died, quite suddenly, before daybreak on the morning of the 16th; while two physicians, who attended Mrs. Lane, testified "that she was not expected to live on May 15th, and that her hopeless condition was generally understood in Athens on that day." The defendant objected to the admission or allowance of the last order, on the ground that the death of Mrs. Lane operated a revocation of Russell's agency; and they excepted to the overruling of these objections. There were other exceptions to rulings on evidence, which require no special notice.

The defendant requested the following charges, and excepted to the refusal of each: (1.) "If the jury find that in making the purchase of the goods involved in this suit, by Russell as agent, if any such thing there was, there was an understanding between him and plaintiffs that he was to make a profit out of the contract, then they must find for the defendant." (3.) "If the jury find from the evidence that Russell was to have the profit arising from the sale of the goods purchased by him from plaintiffs, and that fact was made known to them by him, then they will find for the defendant, unless they further find that plaintiffs notified Mrs. Lane of such dealings with her agent, or otherwise placed her on her guard, or find that Mrs. Lane knew of such dealings on the part of her agent."

The several rulings on the pleadings and evidence, and the refusal of the charges asked, are assigned as error.

R. A. McClellan, for appellant.—(1.) The plaintiffs, not being the beneficial owners of the account, could not recover on it.—Code, § 2594; 49 Ala. 207, 253; 44 N. J. L. 445. (2.) Plaintiffs having made a general assignment pending the suit, the suit must have been abated, or further prosecuted for the use of their assignees. If defendant should pay the judgment to plaintiffs, what protection would he have against the assignees? If he could pay the judgment to them, could he not pay them the debt before judgment, notwithstanding the assignment? (3.) An agent is not a competent witness, as to any transaction with or statement by his deceased principal, when the effect of a judgment for his principal would make him personally liable.—Code, § 2765; 60 Ala. 374; 74 Ala. 213, 218; 71 Ala. 102; 67 Ala. 386; 66 Ala. 29; 65 Ala. 294 (4.) A contract made by an agent, securing a profit to himself individually with the knowledge of the other contracting party, is void.—Whart. Agency, 245, 460. (5.) The death of

[Davis v. Davis.]

the principal operates a revocation of the agency, and persons afterwards dealing with the agent are charged with knowledge of the death.—Whart. Agency, 103, 104; Benj. Sales, 91–2; 9 B. & C. 170; 10 M. & W. 1; 34 Amer. Dec. 648; 52 Miss. 353; 1 Handy, 70; 30 Vt. 11; 46 Vt. 728; 4 Peters, 331; 14 W. & S. 200; 29 Texas, 204; 2 Humph. 350; 50 Ala. 63; 68 Ala. 204; 31 Ala. 274. (6.) Sending an order or proposal by mail does not constitute a contract until it is received and accepted.—21 Ala. 721; 57 Ala. 253; 32 Amer. Rep. 40; Bish. Contracts, 322–28; 1 Parsons Contr. 481–85.

HUMES & SHEFFEY, contra, cited Garrett v. Trabue, Davis & Co., 82 Ala. 227; Phœnix Insurance Co. v. Moog, 81 Ala. 335; Shotwell v. Gilkey, 31 Ala. 724; 1 Amer. & E. Ency. Law, 844; Dolberry v. Trice, 49 Ala. 207; 3 Brick. Dig. 707.

STONE, C. J.—This is the second appeal in this case. Garrett, adm'r, v. Trabue, Davis & Co., 82 Ala. 227. Pending the suit in the Circuit Court, Trabue, one of the plaintiffs, died. Much more than eighteen months afterwards his death was suggested, and an order was made continuing the cause on the docket in the names of the survivors. It was contended in the court below, and the contention is renewed here, that the death of one of the plaintiffs rendered a revivor necessary; and inasmuch as no steps were taken looking to such revivor until after the eighteen months expired, it is claimed that the Circuit Court should have declared the suit abated.

The suit was commenced by three persons, styling themselves partners. One of the three died, leaving two survivors. This was in no sense a change of the parties so as to necessitate a revivor. Such event in the history of a suit by partners does not abate the suit. All it does is to cast the alleged title and legal ownership of the chattel or *chose* in action, the subject of the suit, on the survivors, who continue the prosecution of the suit in their own names, as was rightly done in this case. There is nothing in this objection.—*Phœnix Ins. Co. v. Moog*, 81 Ala. 335.

The suit was brought by Trabue, Davis & Co., a partnership composed of James Trabue, Wm. A. Davis and Richard Trabue, against the personal representative of Mrs. Eliza A. F. Lane. The suit was on an account for merchandise sold. The firm of Trabue, Davis & Co. failed, and made an assignment of its entire effects to Humphrey & Boyle, assignees, in trust that, "after defraying the expenses of conducting and executing this trust, including a reasonable compensation to

the trustees and their counsel, they shall distribute and pay said assets, or their proceeds, to the creditors of the said Trabue, Davis & Co., in accordance with their legal and equitable rights, giving such priorities only as exist by law." After this assignment was made, the defendant pleaded the making of the same *puis darrein continuance* against the further maintenance of the suit by the present plaintiffs. The ground on which this defense is rested is, that having parted with all interest in the claim, Trabue, Davis & Co. should not be permitted to enforce its collection, but that Humphrey & Boyle, the assignees, are alone entitled to the money. The Circuit Court struck out this defense as frivolous.

When a party to a pending suit dies, our statutes make provision for reviving the suit in the name of the legal successor to the title. So, in case the plaintiff or defendant is adjudged a bankrupt, the statute clothes his assignee with the option of having himself substituted as a party in place of the adjudged bankrupt; in which event the suit progresses, not in the name of the original party, but in the name of his assignee. But the law makes no provision for a revivor, or for the substitution of one party for another, in a case circumstanced as the present one is. There is no process known to our jurisprudence by which Humphrey and Boyle can be made to take the place in this suit now occupied by Trabue, Davis & Co. Nor have we found, or been referred to any case, in which the defense here relied on was successfully invoked. The question is not entirely new in this court.—*Dolberry v. Trice*, 49 Ala. 207; *Neilson v. Slade*, *Ib.* 253; *Mason v. Hall.* 30 Ala. 599; *Shotwell v. Gilkey*, 31 Ala. 724; 1 Amer. & Eng. Ency. of Law, 844.

We agree with the Circuit Court in holding that the defense attempted by the pleas *puis darrein continuance* is no answer to the suit. Should a case arise in which the assignor of a claim in suit attempts to interfere with its prosecution, or to divert its proceeds from the trust, we do not doubt the power and duty of the court to make and enforce any order that may become necessary for the preservation of the trust fund, and its ultimate application to the purposes of the trust. And the judgment rendered in such suit, unless tainted with fraud or collusion, would be binding on the trustee and on the beneficiaries. In a case like the present one, the assignment accomplishes its purpose by conveying to the assignee the fruits of the suit.

The competency of the witness Russell to testify against Mrs. Lane's estate, as to a transaction in which he claimed to have acted as her agent by and with her authority, was one

of the contested questions on the former appeal. It was then held that he was a competent witness.—*Garrett v. Trabue, Davis & Co.*, 82 Ala. 227. This question was again reserved on the last trial, and we are urged to review and reverse our former ruling. Russell, the witness, is not a party to this suit. Nor is it shown or pretended that Mrs. Lane, the decedent, at the time of the transaction to which Russell was called to testify, "acted in any representative or fiduciary relation" to any one.—Code of 1886, § 2765. There is nothing in the letter of the statute which makes him incompetent.

We hold there is nothing in this objection. Before the enactment of the statute declaring "there must be no exclusion of any witness because he is a party, or interested in the issue tried," with certain exceptions, the agent was a competent witness to prove his authority, in all cases in which that authority was conferred by oral appointment. This rule was, to some extent, founded in public convenience and necessity. 1 Green. Ev., § 416. "Otherwise," says this standard author, "affairs of daily and ordinary occurrence could not be proved, and the freedom of trade and commercial intercourse would be inconveniently restrained. . . . Thus, a porter, a journeyman, or salesman, is admissible to prove the delivery of goods. A broker, who has effected a policy, is a competent witness for the assured, to prove any matters connected with the policy; even though he had an interest in it arising from his lien. A factor, who sells for the plaintiff, and is to have a poundage on the amount, is a competent witness to prove the contract of sale. So, though he is to have for himself all he has bargained for beyond a certain amount, he is still a competent witness for the seller. A clerk, who has received money, is a competent witness for the party who paid it, to prove the payment, though he is himself liable for the receipt of it. A carrier is admissible for the plaintiff, to prove that he paid a sum of money to the defendant by mistake, in an action to recover it back. So of a banker's clerk. . . And an agent is also a competent witness to prove his own authority, if it be by parol."

We have thus shown that Russell would have been a competent witness to prove the facts he testified to, even before the enactment of our statute.—Code of 1886, § 2765. The whole purpose of that enactment was, to relieve persons of disability to give evidence, on the ground that they were parties to the suit, or interested in the result. It would be strange if we were to hold that a statute, enacted with this intent, had the effect of rendering incompetent on the ground of interest persons who were adjudged competent to testify before and independent of its provisions.

[Davis v. Davis.]

We adhere to the ruling made on the former appeal, that Mrs. Lane's death on May 16, not communicated to plaintiffs, did not, *per se*, absolve her estate from liability to pay for the merchandise ordered by the agent on the 15th, although the goods were not, in fact, shipped until after her death.

All other rulings of the court on the introduction or exclusion of testimony are free from error.

The testimony tended to show that Mrs. Lane had several plantations which were cultivated by tenants, and that she made advances to her tenants to enable them to make crops. The testimony further tended to show that Russell was Mrs. Lane's agent to procure and distribute the supplies to the tenants ; and that with her knowledge, he, Russell, charged the tenants on the advances so made to them, 10 per cent. on the wholesale prices at which he purchased the supplies, and that he, Russell, on his own personal account, got the benefit of this 10 per cent. profit. Russell testified, that Trabue, Davis & Co. knew of his intention to charge the tenants 10 per cent. profit, and that he, Russell, was to have the benefit of it. On this phase of the testimony, the defendant requested written charges to the jury, which asserted that such arrangement, unless Mrs. Lane was notified of it, would entitle defendant to a verdict. These charges were refused, and defendant excepted.

These charges ignore all inquiry as to whether Russell was the authorized agent of Mrs. Lane to make the purchases, and thus found her right to a verdict solely on the ground that Russell was personally to reap the 10 per cent. profit on the resale, and that Trabue, Davis & Co. had notice of that fact. If Russell, while filling the relation of agent to Mrs. Lane, without her knowledge and consent secured to himself a side or incidental profit, this was a breach of trust on his part, and would authorize her to demand and recover from him whatever he so realized. It could have no effect, however, on plaintiffs' right of recovery. The success of their suit depended on proof by them that Russell was the authorized agent of Mrs. Lane to make the purchases, and that he executed the agency by making the purchases. The charges were rightfully refused.

Affirmed.

McClellan and Walker, JJ. not sitting.